Judge Hitchcock;
delivered the opinion of the court :
The two leading questions which require the consideration of the court are:
1. From the facts disclosed in this case have the plaintiffs a •right of action against the defendants ?
2. If they have such right of action, then can they in this form of action recover?
That the plaintiffs have sustained a loss is clear, and it would *378 seem to be equally clear that this loss was sustained in consequence of the erection of the dam by the defendants. It is also-clear that the plaintiffs had the right of the free navigation of the Muskingum river; and if obstructed in the exercise of this right by any individual or individuals, without lawful authority, they are entitled to a compensation in damages.
The defendants insist, however, that they are protected under the several acts of the legislature which were read to the jury and considered in evidence.
The first of these acts is found in 10 Ohio Statutes, 173. It commences by setting forth in a preamble that, “whereas it has been represented to this general assembly by John McIntyre and his-associates, that by erecting a dam across the Muskingum river, at a certain point above its confluence with the Licking creek, ,and' conducting the water by a canal to a point below the falls of said Muskingum river, very great advantage for water-works can be secured, and the navigation of said river very *much improved.” The preamble then goes on to state that McIntyre ancb his associates have applied to the general assembly to have a special law passed authorizing, them to construct a dam and canal as aforesaid, upon such terms as shall be deemed just and reasonable.
I have been thus particular in noticing the preamble, for although-it is no part of the statute it furnishes the means by which it may be construed. It is a true indication of the intention of the legislature. This intention was not to obstruct, but to improve the navigation of the Muskingum river. Acting as the guardian of the public weal, they supposed they possessed this power. Had it been supposed that the navigation would have been in the least obstructed, it is not probable that any legislative action would have taken place. McIntyre and his associates represented that the navigation would be improved, and at the same time great advantages of water-works secured. If this double object could be obtained, it was desirable it should be. Having this in view, the-act was passed.
By its provisions, McIntyre and his associates are authorized to erect a dam. The place where, and the manner in which it is to be built, are pointed out. They are required to build a slope and keep the same in repair, and also construct a lock through which boats may be passed with safety, and “ without delay to open said *379 lock,” that persons wishing to pass through “may pass free of expense.” Throughout the whole act the legislature seem to have been particularly cautious to secure the free navigation of the-river. So that that could be done, they were willing that McIntyre and associates should take to themselves the advantage of all water power for propelling machinery. Arid that there might be no mistake, no room for controversy, they close the statute with the following proviso: “ That if at any time the said John and his-associates,-or his or their legal representatives, should so erect said works, or suffer the same to get so out of repair as that the convenient navigation of said river should be in anywise impeded or rendered dangerous, the said John and his associates, or his or their legal representatives, shall be liable to the civil action of any person injured.”
*By the act of February 24, 1816, 14 Ohio L. 293, the associates of John McIntyre are incorporated by the name of the “ Zanesville Canal and Manufacturing Company.” All the privileges and immunities conferred upon McIntyre and his associates,, by the act of 1812, are conferred, and all their duties are imposed,, upon this company, except that the company are to complete the-lock in one year and the canal in ten years.
The third act read in evidence makes no material change so far as respects the case under consideration, unless in that clause-which inflicts a penalty of ten dollars per day for each day any person may be obstructed from passing through the lock. To the-validity of these statutes, as affording a protection to the defendants, the plaintiffs object on the ground that they interfere with the “ordinance for the government of the territory of the United States northwest of the river Ohio.” Ohio L. L. 252. Article 4, page 256, contains this clause: “ The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the-same, shall be common highways, and forever free, as-well to the inhabitants of said territory as to the citizens of the United States andthose of any other state that maybe admitted into-the confederacy, without any tax, impost, or duty therefor.” This portion of the ordinance of 1787 is as much obligatory upon the State of Ohio as our own constitution. In truth, it is more; for' tho constitution may be altered by the people of the state, while-this can not be altered without the assent both of the people of this state and of the United States through their representatives.. *380 It is an article of compact, and until we assume the principle that ■the sovereign power of the state is not bound by compact, this ■clause must be considered obligatory. Certain “ navigable rivers ” •in Ohio are “ common highways.” Of this character is the Mus■kingum river. Every citizen of the United States has a perfect -right to its free navigation. A right derived, not from the legislature of Ohio, but from a superior source. With this right the legisJature can not interfere. In other words, they can not, by any daw which they may pass, impede or obstruct the navigation of this river. That which they can not do' directly they can not *do indirectly. If they have not themselves the power to obstruct or impede the navigation, they can not confer this favor upon an individual or a corporation. But it does not follow that laws may not be enacted to improve the navigation of these rivers. ■Nor does it follow that their-waters may not be used for hydraulic purposes, where it can be done without injury to the navigation.
In passing laws to improve the navigation, care should be taken that that which was intended as an improvement shall not operate as an obstruction. The legislature, in enacting the law of 1812, seem to have been influenced by these considerations. They understood well their own power and the rights of the citizens. They grant the license prayed for, but they annex to it the condition contained in the proviso before recited. In effect, they say to McIntyre and his associates, you may build your dam, construct your lock and canal. You shall do it in a particular manner. But you do it at your own peril. If you “ so erect said works, or -suffer the same to get so out of repair, as that the convenient navigation of said river should be, in any wise, impeded or rendered dangerous,” this act shall not screen you; you “shall be liable to -the civil action of any person injured.” In this view of the statute, and it seems to me this is the proper construction, it is not in- • consistent with the ordinance. If, however, the statute is to be regarded as an absolute grant of the right, to erect these works, ■although the erection should obstruct or materially interfere with -the navigation, it would clearly interfere with the ordinance. •Evfery legislative act ought, if possible, to receive a construction • consistent with the constitution. For it is not to be supposed that 'this body would intentionally violate that instrument. Should they, however, do it, their act would be void, and of no binding /efficacy.
*381 The counsel for defendants contend that if the legislature had the power to pass this law, or to make the grant, as they term it, the defendants can not be answerable for the consequences. That the only proper inquiry is, have the defendants complied with the. requisitions of the act. This is giving to the act an effect beyond that intended by the legislature, for, as we have already seen, by-the proviso at the close, *Mclntyre and his associates were to be liable, if the erection should prove injurious to the navigation. Let it be remembnred that the public interest was not the sole or principal object in view with those persons. Their great object was to acquire the control of the water power. . In order-to do this, they were willing to undertake that -the navigation-should not be obstructed, or if it was, that they would be answerable for the consequences.
Besides, were we to carry out the argument of defendants’ counsel, what would be the consequence ? Even had these works, instead of improving the navigation, impeded or entirely obstructed it, yet the defendants would have been protected. And thus the -effect of the ordinance would have been entirely defeated.
It is further urged by the defendants’ counsel, that the plaint-iffs can not recover in this 'case, because, as they allege, it was-owing to want of care on their part, and on the part of those whom they employed, that the property was lost. And the case of Butterfield v. Forrest, 11 East, 60, is cited. The ease is not without difficulty upon this point. If it was through the carelessness of the plaintiffs that the property was lost, although in-consequence of an obstruction created by the defendants, still the defendants ought not to be answerable. If an individual will voluntarily cast himself upon an obstruction of this character, when-he can, by ordinary care, avoid it, if he sustains an injury it is in consequence of his own folly and he must bear it. This was a question peculiarly proper for the consideration of a jury. It does not seem to have been much considered upon the circuit. So-little so, in fact, that the parties agreed to let,the jury assess the damages, without inquiring particularly into the facts of the case, leaving it for the court to settle the law. Had the jury, upon an examination of all the facts, returned a general verdict for the plaintiffs, a new trial would not have been granted'upon this part of the case, unless, in the opinion of the court, that verdict was against the evidence. As it is, this is, in truth, the only proper *382 point of view in which to consider it. If, from the evidence, the jury might, with propriety, have found for the plaintiffs, then the verdict should not be disturbed.
*From the evidence, then, it appears that when the lock was out of repair, people were in the habit of passing boats over the dam. That the plaintiffs employed two experienced pilots to -■manage their boat. That the boat passed over, but not in a proper ■ direction, owing to the counter current. That every effort was made within the power of those on board to save her,-but in vain. In consequence of the direction given to her by the counter current, she was forced against the pier of the bridge and lost. And that but for the dam, she would have passed down in safety. One -of the pilots stated that, in his opinion, “ an ordinarily careful man would not have taken the boat over the dam at that time, with that amount of loading. Had it have been his boat he would ■have either delayed, until the lock could have been opened, or he would have taken out all the loading and gone with the' boat ■empty.” Whether this opinion was communicated to the supercargo of the boat does not appear. With these facts before them, might not the jury have inferred that the loss was in consequence ■of the dam, and not through the negligence or willful presumption of the plaintiffs or their agents? At the trial it did appear to me that the jury not only might, but that they ought to, make this inference. That there was more danger in passing this dam than in the ordinary navigation of the river, there can be no doubt. In consequence of this increased danger, the plaintiffs, or rather their agents, employed, not only one, but two experienced pilots, residents in the neighborhood, and well acquainted with all the difficulties. .What inore could have been required of them? 'True', one of these pilots now says that he thinks it was imprudent. Whether this was an opinion formed at the time, or whether it was formed subsequent to, and in consequence of, the disaster, does not appear. From the apparent and acknowledged character of the witness, I should incline to the opinion that the latter was the case. Had it been previously formed, it would have been communicated to the agent of the plaintiffs. And if communicated, the experienced counsel of the defendants would not have failed to have had a fact so material in evidence. All these circumstances evidenced, the court are of opinion that there *383 *was not that want of ordinary care in the plaintiffs which ■ought to induce a jury to find against them.
It is again insisted that the defendants can not be made liable in this case, because the case shows that they made use of sufficient ■care and diligence to keep their works in repair. And that it was owing to the act of Providence, to the successive floods, and the peculiar nature of the season, that they were not able, at this time, to open the lock. To me, it seems that in this particular they err, in consequence of mistaking the true nature and effect of the authority, grant, or license under which they assumed to act in the erection of the dam and other works. If from the erection of the works, or in consequence of their being out of repair, “ the navigation of said river should be in anywise impeded or rendered dangerous,” the act does not protect them. No matter as to the cause. Before they engaged in this business, they knew the condition, and were willing to assume the responsibility. To decide diffoiently, would be'to decide that the legislature. had the right to confer upon others the privilege of obstructing in some measure, .and for a time, a navigation, to the free enjoyment of which the ■ordinance intended to secure a right in each and every citizen of the United States.
To sustain them on this ground of defense, counsel have referred to the case of Townsend v. The President, etc., of the Susquehannah Turnpike Road, 6 Johns. 90. But there is a clear and manifest distinction between that case and the one before the court. A turnpike company construct a road, and from travelers they receive toll. If is intended for the double purpose of accommodating the public and of securing to the company pecuniary gain. In such case, if, through the neglect of the company, the road gets out of repair, in consequence of which an individual .sustains a loss, it is right that the company should remunerate him. But if care and diligence is exercised to keep the road in repair, it would be wrong to make them liable.
How is the case before the court? Here was a public highway, made, not by the “ Zanesville Canal and Manufacturing Company,” but by the Supreme Creator of all things. The plaintiffs had a right secured tef them, by the supreme law of the land, to. travel this highway, and to transport their property *upon . it, without the let or hindrance of any man or body of men. This right was obstructed by the defendants, or in consequence of their *384 acts originally done. This obstruction they, at the time, would have been glad to have removed, and made efforts to remove, but could not, owing to circumstances not within their control. But they voluntarily erected the works which were the first cause of the obstruction, and must be liable for all consequences. It may be a hard case for them, but it would be equally, nay, more hard, to throw the risk upon those whose constitutional rights, secured by compact, had been interfered with.
After mature deliberation, and after full consideration of all 'the facts, the court are unanimous in the opinion that the plaintiffs-have a right of action against the defendants.
The next question to be considered is, whether the plaintiffs can recover in this form of action ? The declaration contains two counts.
The first was intended to be framed under the statute, but owing to some difficulty about the proof, this was. abandoned on the trial.
The second is a count for a common nuisance.
.There is some controversy between the counsel as to whether the first count was or was not abandoned; but according to the recollection of the judges who heard the case upon the circuit, this was done. Subsequently some evidence was introduced which might have conduced to sustain this count, but ought not to be considered under the circumstances.
The real question then is, does the evidence sustain the second-count?
Had there been no legislative action upon the subject, there can be no doubt but the dam of the defendants was a common nuisance. Such is the character of every unlawful obstruction of a public highway, whether that highway be by water or by land. But the defendants’ counsel contend, inasmuch as these works-were erected in pursuance of a legislative act, that under no.circumstances could they be treated as a common nuisance. But that if a person sustained an injury in consequence of their erection or being out of repair, compensation must be recovered, either under the act of 1823, for delay, or under the act of 1812, for ^improperly erecting the dam and lock, or for suffering the same to get out of repair.
The act of 1823 gives to the party delayed a penalty of ten dollars for every day’s delay, to be recovered against the corporation^ *385 It never could have been the intention of the legislature, that this should be the only remedy which a party aggrieved might have. Or if such was the intention it was one which no court could consistently regard. It would be granting to the legislature the power to grant an individual or a corporation the privilege or right of obstructing the navigation of a river upon the payment of this penalty to a person injured. The question is not whether the penalty would be sufficient, but whether the legislature possess the power. To me it seems clear they do not.
And it is equally clear that the penalty in some cases would, in fact, be no compensation. It is well known that the navigable rivers which empty into the Ohio, and through it into the Mississippi, can only be navigated in particular stages of water. The farmer or other citizen who would adopt this mode of conveyance to transport his property to market, must embrace the opportunity when a proper stage of water will enable him to proceed, and the delay for-a single day might cause a delay for weeks and perhaps for months. These plaintiffs might have delayed unt'il the lock could be opened, and have recovered this penalty, but they were-not bound to do it. To require it in all cases might, and probably would in some, prove ruinous.
If a plaintiff do not go for the penalty, is it necessary that he should predicate his action upon the statute, and claim damages on the ground that the dam and lock were improperly erected or that the same wore suffered to get out of repair ? He may do this, and perhaps it would be the more proper mode of proceeding, but in my view of the law it is not absolutely necessary that he should.
The right to navigate the river is a right secured to the citizen by the ordinance of 1787. It is a right of which he can not be deprived unless by agreement between the people of the United States, through their representatives in Congress, and the people of Ohio, through their ^representatives in the general assembly. This right has been violated by the defendants, and they seek to protect themselves under a law of the state. Under this law they are protected as long as the navigation of the river remains unobstructed, but' so soon as in consequence of their works it becomes obstructed, the law ceases to protect them.
Without the law this dam would be a nuisance. But under the law it is no nuisance so long as the lock remains in a situation that boats may be passed through, because the navigation is pot ob *386 structed. But so soon as it is out of repair so that bqats can not be passed through, it becomes a nuisance because the navigation is obstructed. It is only upon condition that the navigation is at all times kept open, that the defendants can protect themselves under the statute. Upon this point, although one member of the court doubts, still a majority believe the action is well brought.
It is objected further to the recovery, that admitting the action to be well brought, still the proof is variant from and does not sustain the declaration. The allegation in the declaration is, that the plaintiffs “ were constrained to pass their said boat, loaded as aforesaid, over the said dam of the said defendants, by means whereof the boat was wrecked,” etc. The evidence shows that the boat was not wrecked immediately upon the dam, or in passing, but that she held together until she struck the pier of the bridge. Although the evidence is clear that the dam was the cause of the loss, it is urged that the fact that the boat was driven against the bridge should have been stated, and that the loss did not happen in the manner set forth in the declaration. To say the least, this exception is extremely technical. What was the cause of the-loss of the ■boat? The testimony in the case answers the question. It was the dam. And whether the boat was actually wrecked while upon the dam, or immediately after by striking against a rock, a log, or the pier of a bridge, is immaterial. The charge is made with suf'ficient precision to give all necessary notice to the defendants, and is sufficiently sustained by the evidence. ' '
Another question made in this case is, whether the plaintiff’s are entitled to receive interest upon the value of the property lost, the jury having found the value of that property, ^and also the amount of interest.' So far as respects the plaintiff's there is nothing unjust in this. They have been deprived of this property from which they might have made gain, equivalent, or more than equivalent to the interest. But interest is allowed, not only on account of the loss which a creditor may be supposed to have sustained by being deprived of the use of his money, but on account of the gain made from its use by the debtor. The law connected with the subject is peculiarly applicable to those who stand in the relation of creditor and debtor. The statute of this state fixes the rate of interest at six per cent., but it has explicit reference to this relation of creditor and debtor. In actions of trespass, trover, or case where property was the subject matter of dispute, I have always supposed ' *387 dhe value of the property taken or destroyed was the rule of damage. The jury in assessing damages might take into consideration the length of time that a person had been deprived of his property in assessing these damages, and the court would not be disposed to interfere. But to compute interest, as such, I had considered not allowable. This has been done in the present case, with a view to submit the question of law to the- court. My own opinion is that this interest ought not to be allowed, and that the recovery should be for the value of the property only. In this, however, the other no embers of the court differ from me, and think that the interest is .a proper item of charge against the defendants. And were it not that I have long considered the principles of law to be different, I should concur with them; for even with this the plaintiffs will receive but an inadequate consideration for the loss actually sustained.
Judgment will be entered upon the verdict in favor of the plaintiffs, for the sum of two thousand one hundred and thirty-six dollars and seventy-seven cents, the value of the boat and loading lost; together with the interest as returned by the jury.