**[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 339.]**

LANDIS ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* GRANGE MUTUAL

INSURANCE COMPANY, APPELLANT AND CROSS-APPELLEE.

[Cite as *Landis v. Grange Mut. Ins. Co.*, 1998-Ohio-387.]

*Insurance—Motor vehicles—Claim for underinsured motorist benefits under employer's policy—Denial of claim by insurer—Determination of prejudgment interest pursuant to R.C. 1343.03(A)—Insurance company not liable for attorney fees incurred by claimants pursuant to a contingency fee contract, but liable for reasonable attorney fees pursuant to R.C. 2721.09, when.*

(No. 97-707—Submitted February 17, 1998—Decided July 15, 1998.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Erie County, No.

E-96-034.

_____

{¶ 1} Frederick Landis, an employee of Foster Chevrolet, Inc. ("Foster"), was a designated insured for underinsured motorist coverage in the amount of $1,000,000 pursuant to a policy obtained by Foster and issued by Grange Mutual Insurance Company ("Grange"). On the night of June 5, 1988, while walking along Columbus Avenue in Sandusky, Ohio, Landis was negligently struck by an underinsured motorist. The tortfeasor's insurer paid $100,000, the liability limit of the tortfeasor's policy, to Landis.

{¶ 2} Landis and his wife, Ruthann, presented their demand for underinsured motorist benefits under the Grange policy. Grange denied the claim on its assertion that Landis was not a designated insured. Subsequent to the denial of the claim, the Landises executed a contingency fee contract with the law firm of Murray & Murray Co., L.P.A. On August 17, 1988, the Landises filed a complaint

for declaratory judgment, seeking a declaration that Landis was entitled to underinsured motorist benefits under the Grange insurance policy.

{¶ 3} On June 14, 1993, the trial court issued its opinion, finding that Grange was required to provide underinsured motorist coverage for Landis. The ruling was affirmed by the Erie County Court of Appeals. The amount of damages was thereafter submitted to arbitration, and the Landises were awarded $1,300,000. The award was reduced to judgment on December 8, 1995, and Grange immediately paid the policy limit to the Landises. (The Landises have disclaimed any right to the $300,000 in excess of the policy limit that was awarded by the judgment.) Landis paid attorney fees in the amount of $333,333.33 to Murray & Murray, pursuant to the contingency fee contract.

{¶ 4} On December 8, 1995, Landis filed a motion for reimbursement of attorney fees and for prejudgment interest. Landis did not assert that Grange's denial of benefits constituted bad faith. The trial court held that a claim for underinsured motorist coverage is based on tort and therefore that Landis had no claim for prejudgment interest under R.C. 1343.03(A) or (C). The trial court granted the motion for reimbursement of attorney fees, finding the contingency fee contract to be reasonable and proper.

{¶ 5} On appeal, the court of appeals reversed the trial court's denial of prejudgment interest and held that "the accumulation of interest pursuant to R.C. 1343.03(A) begins on the date the claim becomes due and payable." The court did not determine the date on which Landis's claim became due and payable. The court vacated the award of attorney fees, finding that Grange could not be held liable for a contractual agreement (the contingency fee contract) to which it was not a party. The court remanded for determination of the amount of prejudgment interest to be awarded and a determination of a "proper award of attorney's fees." Grange appealed, and Landis filed a cross-appeal.

**{¶ 6}** The cause is now before this court pursuant to the allowance of a discretionary appeal and cross-appeal.

───────────────

*Murray & Murray Co., L.P.A., James T. Murray* and *Joseph A. Zannieri*, for appellees and cross-appellants.

*Buckingham, Doolittle & Burroughs, Donald A. Powell* and *Robert L. Tucker*, for appellant and cross-appellee.

*Clark, Perdue, Roberts & Scott* and *Edward L. Clark,* urging affirmance on the appeal for *amicus curiae* Ohio Academy of Trial Lawyers.

*Mazanec, Raskin & Ryder Co., L.P.A.*, and *Edwin J. Hollern,* urging reversal in part on the appeal for *amicus curiae* Great American Insurance Companies.

───────────────

**PFEIFER, J.**

**{¶ 7}** Two separate issues are raised in the controversy before us: (1) whether Landis is entitled to prejudgment interest pursuant to R.C. 1343.03(A) and (2) whether Grange is liable for the attorney fees that Landis incurred pursuant to a contingency fee contract. For the reasons that follow, we answer the first question in the affirmative and the second question in the negative, and address each question separately.

**{¶ 8}** R.C. 1343.03(A) states that "when money becomes due and payable upon any * * * instrument of writing * * * and upon all judgments * * * for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum."

**{¶ 9}** Grange spent considerable effort attempting to persuade us that uninsured/underinsured motorist insurance ("UMI") claims are based on tortious conduct and therefore that R.C. 1343.03(A) does not allow prejudgment interest. Landis spent considerable effort attempting to persuade us that UMI claims are

contract claims and therefore that R.C. 1343.03(A) does allow prejudgment interest. We conclude that Landis's UMI claim is a contract claim, while acknowledging that there would be no UMI claim absent tortious conduct, the accident. *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 632, 635 N.E.2d 323, 327 (legal basis for recovery of UMI benefits is contract); *Motorists Mut. Ins. Co. v. Tomanski* (1971), 27 Ohio St.2d 222, 223, 56 O.O.2d 133, 134, 271 N.E.2d 924, 925 (right to recovery of UMI benefits is on the contract).

{¶ 10} In the declaratory judgment action, the trial court determined that Landis was covered by the UMI provision. According to the declaratory judgment, when Landis applied for UMI benefits, Grange should have paid them to him. In other words, the benefits were due and payable to him based on an instrument of writing, the insurance contract. R.C. 1343.03(A). That the benefits were denied in good faith is irrelevant because lack of a good faith effort to settle is not a predicate to an award of prejudgment interest pursuant to R.C. 1343.03(A), as it is under R.C. 1343.03(C). The proper way to fully compensate Landis is to award prejudgment interest. *Royal Elec. Constr. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 116-117, 652 N.E.2d 687, 692.

{¶ 11} In dissent below, Judge Glasser stated that "awarding prejudgment interest under the circumstances of this case clearly discourages litigation of reasonable issues." We disagree; parties will remain free to litigate reasonable issues. However, when they litigate, they will be subject to a prejudgment interest award, not as a punishment but as a way to prevent them from using money then due and payable to another for their own financial gain. We affirm the judgment of the court of appeals as to prejudgment interest under R.C. 1343.03(A).

{¶ 12} Grange argues that even if prejudgment interest under R.C. 1343.03(A) is proper, no money was due and payable until the arbitration award was reduced to judgment. We disagree. According to the declaratory judgment, the money was due and payable. That the amount remained undetermined until

4

arbitration does not bar recovery of prejudgment interest. *Royal Elec. Constr. v. Ohio State Univ.*, 73 Ohio St.3d 110, 652 N.E.2d 687, syllabus.

{¶ 13} If Grange had not denied benefits, the issue of damages would have gone directly to an arbitrator and the benefits would have become due and payable no later than upon entry of the arbitrator's award. But Grange did deny benefits, and it scarcely seems equitable that the denial of benefits contractually owed to another that led both parties on a lengthy and tortuous journey through the judicial system should redound to Grange's benefit. A determination that the benefits became due and payable upon the entry of the arbitrator's award would, in this case, work an injustice by rewarding Grange for improperly denying benefits. See *Hogg v. Zanesville Canal & Mfg. Co.* (1832), 5 Ohio 410, 424 ("[prejudgment] interest is allowed, not only on account of the loss which a creditor may be supposed to have sustained by being deprived of the use of his money, but on account of the gain being made from its use by the debtor.").

{¶ 14} Whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine. Upon reaching that determination, the court should calculate, pursuant to R.C. 1343.03(A), the amount of prejudgment interest due Landis and enter an appropriate order.

{¶ 15} The second issue concerns whether Grange can be held liable for the attorney fees that were incurred by Landis pursuant to a contingency fee contract to which Grange was not a party.

{¶ 16} In *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 648 N.E.2d 488, syllabus, this court stated that "a trial court has the authority under R.C. 2721.09 to assess attorney fees based on a declaratory judgment issued by the court. The trial court's determination to grant or deny a request for fees will

not be disturbed, absent an abuse of discretion." Abuse of discretion " 'connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court.' " *Pembaur v. Leis* (1982), 1 Ohio St.3d 89, 91, 1 OBR 125, 127, 437 N.E.2d 1199, 1201, quoting *Klever v. Reid Bros. Express, Inc.* (1951), 154 Ohio St. 491, 43 O.O. 429, 96 N.E.2d 781, paragraph two of the syllabus.

**{¶ 17}** Grange and Landis stipulated that the contingency fee agreement between Landis and Murray & Murray was "normal, ordinary, and customary." As the court of appeals noted, "[s]uch agreements permit persons of ordinary means access to a legal system which can sometimes demand extraordinary expense. The mechanism by which this is accomplished is a contract between client and attorney whereby some or all of the risk involved in litigation is shifted to the attorney. The *quid pro quo* for relieving the client of this risk is that the agreement normally calls for the attorney to receive a percentage of any possible recovery. * * * To be sure, the contingency percentage is an arbitrary figure but, like liquidated damages in other contracts, is proper because it is a bargained for result." (Citation omitted.)

**{¶ 18}** This reasoning does not apply to Grange, an insurance company of considerable means. For instance, Grange did not receive the benefit of transferring risk to an attorney. Further, and most important, Grange did not bargain for the contingency fee contract. That the contingency fee agreement was normal and customary as to Landis and Murray & Murray does not mean that it can be enforced against a party that did not agree to it. See *Branham v. CIGNA Healthcare of Ohio, Inc.* (1998), 81 Ohio St.3d 388, 692 N.E.2d 137 (arbitration contract binds only contracting parties). We conclude that the trial court abused its discretion, not by requiring Grange to pay attorney fees, but by requiring Grange to pay attorney fees pursuant to a contract to which it was not a party.

**{¶ 19}** Accordingly, we affirm the judgment of the court of appeals and remand to the trial court for determination of the amount of prejudgment interest

and determination of an award of reasonable attorney fees pursuant to R.C. 2721.09. See *Bittner v. Tri-County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 569 N.E.2d 464; DR 2-106(B).

{¶ 20} Grange also argues that the trial court did not follow the procedural mandate of R.C. 2721.09 in awarding attorney fees. We agree with the court of appeals that the remand moots the issue.

*Judgment affirmed.*

MOYER, C.J., concurs.

DOUGLAS and F.E. SWEENEY, JJ., concur in part and dissent in part.

REECE, COOK and LUNDBERG STRATTON, JJ., dissent in part and concur in part.

JOHN W. REECE, J., of the Ninth Appellate District, sitting for RESNICK, J.

_____

**DOUGLAS, J., concurring in part and dissenting in part.**

{¶ 21} I concur with the majority in affirming the court of appeals on the prejudgment interest issue. I respectfully dissent as to the attorney fees issue.

{¶ 22} In *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 648 N.E.2d 488, we said, at the syllabus, that "[a] trial court has the authority under R.C. 2721.09 to assess attorney fees based on a declaratory judgment issued by the court. The trial court's determination to grant or deny a request for fees will not be disturbed, absent an abuse of discretion." In the case at bar, the trial court awarded attorney fees in the amount it cost the Landises to recover from their own insurance carrier what was due them pursuant to their underinsured motorist coverage. To allow them, as the majority apparently does, less than what they paid to obtain what was owed to them results in the Landises' being left less than whole. It is, indeed, a curious world in which we live. Buy insurance; have coverage denied; sue your company; win at the trial court, the court of appeals, and the Supreme Court levels; have attorney fees case law on your side; yet be awarded

attorney fees in a sum less than what you paid attorneys to obtain the coverage you contracted for. Confucius said: "Do to every man as you would have him do to you; and do not unto another what you would not have him do to you." The International Dictionary of Thoughts (1969) 329. Maybe, somehow, the Landises will understand.

F.E. SWEENEY, J., concurs in the foregoing opinion.

_____

**COOK, J., dissenting in part and concurring in part.**

{¶ 23} Against the grain of its customary treatment of uninsured/underinsured motorist issues, a majority of this court has now decided successive appeals by recognizing the contractual nature of the relationship between insurer and insured. In *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, ___ N.E.2d ___, the majority permitted plaintiffs to avoid the setoff provision of R.C. 3937.18(A)(2) by applying former R.C. 3937.18(A)(2) as interpreted by *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, on the basis that it was the law in effect at the time of contracting. Today's majority holds that uninsured/underinsured motorist claims are based in contract and, pursuant to R.C. 1343.03(A), permits the plaintiffs to collect prejudgment interest on their underinsured motorist claim without a showing of bad faith.

{¶ 24} Overlooked, but not overruled, are this court's decisions in *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309, and *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 635 N.E.2d 317, which would seem to contain contrary logic. *Alexander* overruled *Dairyland Ins. Co. v. Finch* (1987), 32 Ohio St.3d 360, 513 N.E.2d 1324, paragraph two of the syllabus, reasoning that "R.C. 3937.18(A)(1) and (2) are premised on the tortfeasor's *legal liability* to the injured insured." (Emphasis *sic*.) *Alexander*, 62 Ohio St.3d at 400, 583 N.E.2d at 312. Based on that reasoning, the *Alexander* court

held that "[a]n automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such person arise from causes of action that are recognized by Ohio tort law." *Id.* at syllabus.

{¶ 25} The *Alexander* court's abandonment of earlier holdings that R.C. 3937.18 does not displace ordinary principles of contract law (see *Stanton v. Nationwide Mut. Ins. Co.* [1993], 68 Ohio St.3d 111, 113, 623 N.E.2d 1197, 1199, explicitly acknowledging the abandonment) was followed by a series of cases steadily eroding the contractual nature of the relationship between the insurer and the insured. See, *e.g., Holt v. Grange Mut. Cas. Co.* (1997), 79 Ohio St.3d 401, 683 N.E.2d 1080 (policy definition of "insured" party inapplicable to exclude coverage of an insured's wrongful death beneficiary); *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 668 N.E.2d 913 (policy provision that subjects both a person sustaining bodily injury and a person asserting a derivative claim for loss of consortium based on that bodily injury to a single "per person" limitation invalid); *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438 ("other owned vehicle" exclusion unenforceable).

{¶ 26} The *Miller* court invalidated a policy provision requiring the plaintiffs to commence any action against their insurance carrier within one year of the accident causing injury. Bypassing the notion that uninsured/underinsured motorist claims are actions sounding in contract, the *Miller* court ultimately held that the R.C. 2305.10 two-year statute of limitations for *bodily injury* limited the parties' ability to contract for a shorter time period. Accordingly, based on a statute of limitations designed to cover *tort* actions, the *Miller* court overruled the holding in *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 295, 23 O.O.3d 281, 282, 432 N.E.2d 167, 169, that "[g]enerally, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, as between the parties, the time for bringing an action on such contract to a period less than that prescribed

in a general statute of limitations provided that the shorter period shall be a reasonable one."

{¶ 27} Despite these cases which elevate the tort underpinnings of uninsured/underinsured motorist claims over their contractual origin, the majority today says that for purposes of awarding prejudgment interest, uninsured/underinsured motorist claims are based in contract and therefore governed by R.C. 1343.03(A). This decision comes despite R.C. 1343.03(C)'s employment of the expansive phraseology "based in tortious conduct." The significance of this language was noted by the Franklin County Court of Appeals in deciding *Woods v. Farmers Ins. of Columbus, Inc.* (1995), 106 Ohio App.3d 389, 396, 666 N.E.2d 283, 288: "Had the General Assembly wanted R.C. 1343.03(C) to apply only in tort cases, it could have used the simpler phrase 'tort action,' rather than 'civil action based on tortious conduct.' Indeed, the phrase 'based on tortious conduct' appears to be unique in the Revised Code to R.C. 1343.03. Elsewhere in the Revised Code, the terminology encompassing tort actions is less expansive * * *."[1] For instance, "tort action" is used in former R.C. 2309.01(A) and 2315.18, Am.Sub.S.B. No. 1, 142 Ohio Laws, Part I, 1661, 1684, 1685-1686, and in R.C. 2317.45(A)(2), 2317.62(A)(3), and 2315.21(A)(4), and liability "in tort" is employed in R.C. 2307.31(A).

{¶ 28} Accordingly, with respect to prejudgment interest, support for treating uninsured/underinsured motorist claims under rules of tort rather than contract can actually be found in the *language* of the statute. Present in this case, then, is a much stronger basis for applying R.C. 1343.03(C)—and consequently avoiding the contractual origin of an uninsured/underinsured motorist claim—than

---

1. The phrase "based on tortious conduct" now appears in R.C. 2743.18, dealing with interest on judgments in the Court of Claims, and in uncodified Section 6(A) of Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 3867, 4029, referring to amendments to several other Revised Code sections dealing with interest on judgments.

existed in the many cases where this court premised its avoidance of contract principles on its elastic interpretation of the uninsured/underinsured motorist statute's public policy. As a result, the majority's failure to apply R.C. 1343.03(C) in this case is irreconcilable with existing law on the subject. Because I do not read the court's most recent opinions as signaling a return to treating an insurance policy primarily as a contract between the insurer and the insured (*Ohio Farmers Ins. Co. v. Cochran* [1922], 104 Ohio St. 427, 135 N.E. 537), I respectfully dissent.

{¶ 29} With respect to attorney fees, I concur in the majority's decision to remand the issue to the trial court for further proceedings. Before calculating reasonable fees pursuant to *Bittner v. Tri-County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 569 N.E.2d 464, however, the trial court, pursuant to the procedures set forth in R.C. 2721.09, must first determine whether attorney fees are "necessary or proper." See *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 160, 648 N.E.2d 488, 490.

REECE and LUNDBERG STRATTON, JJ., concur in the foregoing opinion.

_____