In this accelerated appeal,[1] plaintiffs-appellants, Carol L. and John G. Miller, and their minor son, Allen J. Miller ("Allen"), appeal a decision of the Butler County Court of Common Pleas awarding them interest on an arbitration award from the day the case was submitted to arbitration.
In October 1996, while crossing a street, twelve-year-old Allen was hit by a car driven by defendant, Kevin K. Gunckle. The owner of the car was Kevin Cook. Allen suffered serious injuries as a result of the accident. In January 1997, Allen and his parents filed a complaint against Gunckle, Cook, and defendant-appellee, State Automobile Insurance Company ("State Auto"), appellants' insurer. At the time of the accident, appellants had in effect an insurance policy with State Auto which included uninsured motorist coverage. Gunckle was an uninsured motorist who eventually filed for bankruptcy. Claims against Gunckle and Cook were eventually dismissed.
Liability in the case was contested and the parties agreed to submit the case to binding arbitration. On December 14, 1999, the arbitrators awarded $275,000 in damages to appellants plus ten percent interest on the award from the date of the accident. By leter, State Auto asked the arbitrators to reconsider the award of interest. By revised decision on January 4, 2000, the arbitrators again awarded $275,000 in damages plus ten percent interest on the award but referred the determination as to the date from which prejudgment interest should be calculated to the trial court.
Appellants subsequently filed a motion for an award of prejudgment interest. Alternatively, appellants also sought an order from the trial court "affirming the original arbitration award including interest[.]" On February 1, 2000, the trial court granted judgment in favor of appellants and against State Auto "in the amount of $275,000.00 plus interest[.]" By decision filed the same day, the trial court held that prejudgment interest could not be awarded. It, however, awarded interest from December 2, 1999, the day the case was submitted to the arbitrators. Appellants now appeal and raise the following three assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS IN RECOGNIZING AS BINDING THE ARBITRATION PANEL'S SECOND AWARD.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS IN VACATING THE ARBITRAION PANEL'S FIRST AWARD.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS IN RULING THAT PLAINTIFFS-APPELLANTS ARE ENTITLED TO INTEREST FROM THE DATE OF THE FIRST ARBITRATION DECISION.
Before we address appellants' assignments of error, we wish to point out that what is at issue in this appeal is not the arbitrators' $275,000 award, but rather the trial court's decision to award interest from the day the case was submitted for arbitration. Following appellants' motion to affirm the original arbitration award, the trial court entered judgment in favor of appellants in the amount determined by the arbitrators. This court's decision regarding the trial court's award of interest will therefore not disturb the $275,000 award. In addition, we will construe appellants' first two assignments of error as solely challenging the arbitrators' award of interest.
In their first assignment of error, appellants argue that the arbitrators had no power to reconsider their original award and that as a result, the trial court erred by recognizing as binding their second award.
"Arbitrators exhaust their power when they make a final determination on the matters submitted to them. They have no power after having made an award to alter it; the authority conferred on them is then at an end."Bayne v. Morris (1863), 68 U.S. (1 Wall.) 97, 99, 17 L.Ed. 495. It follows that a second award on the same issue is a nullity. Lockart v.Am. Res. Ins. Co. (1981), 2 Ohio App.3d 99, 101-102. The arbitrators' January 4, 2000 award was a nullity as it decided the same issues that were decided in the original award. The trial court, therefore, erred by recognizing as binding the arbitrators' second award of interest. Appellants' first assignment of error is well-taken and sustained.
In their second assignment of error, appellants argue that the trial court erred by vacating the arbitrators' original award in violation of R.C. Chapter 2711 and Loc.R. 4.02(e) of the Court of Common Pleas of Butler County, General Division. Appellants contend that the trial court implicitly and sua sponte vacated the arbitrators' original award when it recognized the arbitrators' second award.
Loc.R. 4.02(e) governs appeals from voluntary binding arbitration awards and provides that:
 Appeals to the court from an award rendered in an arbitration proceeding under this rule shall be on the record of the arbitration hearing and shall be limited to questions of law as set forth in [R.C.] 2711.01 through 2711.20, inclusive, and shall be commenced by the filing of written objections to the arbitrator's report.
 After a hearing on said objections, the court shall affirm, modify, reverse or vacate the decision of the arbitrator and enter judgment accordingly. (Emphasis added.)
The foregoing language clearly requires a dissatisfied party to file a written objection to the arbitration award. Despite State Auto's assertion that both parties submitted written objections in December 1999, we have found no such objections in the record before us. We therefore find that State Auto violated Loc.R. 4.02(e) when it wrote a letter to the arbitrators instead of filing written objections to the arbitrators' original award.
R.C. Chapter 2711 is the Ohio arbitration statute. It sets out a specific substantive and procedural process that the parties and the courts must follow after the arbitration process is complete. WarrenEdn. Assn. v. Warren City Bd. of Edn. (1985), 18 Ohio St.3d 170. "[T]he vacation, modification or correction of an award may only be made on the grounds listed in R.C. 2711.10 and 2711.11, and then only when the application therefor is made by a party within the time allowed under R.C. 2711.13, i.e., three months." Id. at 173. Thus, "[a]s was recognized in Lockart * * *, R.C. 2711.09 through 2711.14, inclusive, `* * * provide the only procedures for post award attack or support of an arbitration decision.[']" Id.
Pursuant to R.C. 2711.13, any party to an arbitration may file a motion in the trial court for an order vacating, modifying, or correcting the award. R.C. 2711.13 requires notice of a motion to vacate, modify, or correct an award to "be served upon the adverse party or his attorney within three months after the award is delivered to the parties in interest[.]" R.C. 2711.10(D), in turn, provides for mandatory vacation of an award upon application of any party if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
It is worth repeating that "[a] party dissatisfied with an arbitration award has only that recourse to the court of common pleas provided by statute." Lockart, 2 Ohio App.3d at 102. By writing a letter to the arbitrators rather than moving the trial court to vacate the award, State Auto clearly violated R.C. 2711.10.
However, it is well-established that an arbitration award does not become a judgment until it is confirmed by the court of common pleas.Roychowdhury v. Clean Scent, Inc. (C.P. 1993), 63 Ohio Misc.2d 407, 411; R.C. 2711.09. As a result, an arbitration award which has not been confirmed is not a judgment from which prejudgment interest may arise. See, Davidson v. Bucklew (1992), 90 Ohio App.3d 328; Kaser Corp. v. Pope
(Dec. 7, 1998), Warren App. No. CA98-06-073, unreported. Because prejudgment interest is an issue for the court of common pleas to determine, the arbitrators exceeded their powers in granting appellants interest on the arbitration award. R.C. 2711.10(D). We therefore find that although State Auto violated R.C. 2711.10, the trial court did not err by vacating the arbitrators' original award of interest as they were without authority to award interest. Appellants' second assignment of error is accordingly overruled.
In their third assignment of error, appellants argue that the trial court erred by awarding them interest from the day the case was submitted to arbitration. Appellants contend they are entitled to prejudgment interest from the day of the accident.
This court has previously held that prejudgment interest may be available upon a judgment entered on an arbitration award. Kaser Corp., Warren App. No. CA98-06-073, unreported, at 6. The payment of post-judgment and prejudgment interest is governed by R.C. 1343.03. InLandis v. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, the Supreme Court of Ohio held that uninsured/underinsured motorist insurance ("UMI") claims are contract claims which are governed by R.C. 1343.03(A), rather than by R.C. 1343.03(C). Id. at 341. Unlike the latter, R.C. 1343.03(A) does not require proof of a bad-faith failure to settle.
R.C. 1343.03(A) provides in relevant part that "when money becomes due and payable upon any bond, bill, note, or other instrument of writing, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *." "Arbitration awards are considered writings that fall within the purview of R.C. 1343.03[.]" Kaser Corp. at 6.
The purpose of prejudgment interest is to "encourag[e] prompt settlement and [to] discourag[e] defendants from opposing and prolonging, between injury and judgment, legitimate claims. Further, prejudgment interest does not punish the party responsible for the underlying damages, * * * rather it acts as compensation and serves ultimately to make the aggrieved party whole. Indeed, to make the party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment." Royal Elec. Constr. Corp. v. OhioState Univ. (1995), 73 Ohio St.3d 110, 116-117. (Citations omitted.)
Because the purpose of prejudgment interest is to ultimately make the aggrieved party whole, "prejudgment interest is a proper element of damage." Indus. Ent., Inc. v. Mark I Molded Plastics, Inc. (July 10, 1987), Lucas App. No. L-86-237, 1987 Ohio App. LEXIS 7804, at *12, unreported, quoting Note, H. 189: A Legislative Expansion of Prejudgment Interest (1984-85), 10 U.Day.L.Rev. 229, 230; see, also, Clevenger v.Westfield Co. (1978), 60 Ohio App.2d 1. Three rationales for prejudgment interest have been cited: "(1) it is an element of compensatory damages,Lawrence RR. Co. v. Cobb (1878), 35 Ohio St. 94, 98-99; (2) it is restitution for the use of the principal award withheld from the time the injury accrued, Hogg v. Zanesville Canal Mfg. Co. (1832), 5 Ohio 410,424; and (3) it is an inducement to settlement, Kalain v. Smith (1986),25 Ohio St.3d 157, 159." Woods v. Farmers Ins. of Columbus, Inc. (1995),106 Ohio App.3d 389, 393.
Unlike R.C. 1343.03(C), R.C. 1343.03(A) does not specify from which date prejudgment interest should be calculated, other than "when money becomes due and payable." The supreme court has held that "[w]hether the prejudgment interest * * * should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if [the insurer] had not denied benefits, or some other time based on when [the insurer] should have paid [the insured] is for the trial court to determine." Landis,82 Ohio St.3d at 342. (Emphasis added.) A trial court's decision to award or deny prejudgment interest is within the discretion of the trial court and will be upheld absent an abuse of discretion. Cox v. Oliver Mach. Co.
(1987), 41 Ohio App.3d 28, 37.
In denying prejudgment interest to appellants, the trial court relied upon, and adopted the analysis of the First Appellate District's decision in Bowman v. Progressive Cas. Ins. Co. (Dec. 10, 1999), Hamilton App. No. C-990281, 1999 Ohio App. LEXIS 5885, unreported. The key issue in that case was when benefits under the insured's UMI coverage became "due and payable" under R.C. 1343.03A). In addressing the issue, the court created a bright line test as follows:
 [W]e believe that * * * there are two differing situations that are relevant to crafting our rule: (1) cases where the determined amount of coverage for the insured is less than his or her damages, and (2) cases where the determined amount of coverage for the insured exceeds his or her damages.
 [W]here the amount of coverage is less than the insured's damages[,] prejudgment interest should be due from the date of the accident. This rule makes sense because the insured will never be fully compensated for his or her injuries. * * * Every day after the accident, the real amount of coverage shrinks, and the insured will receive less with each passing day. The prejudgment interest thus helps to "make the aggrieved party whole[.]" In other words, the prejudgment interest will help put the insured closer to the amount of recovery he or she would have received if the tortfeasor had been adequately insured. * * *
 On the other hand, * * * where the insured's coverage exceeds his or her damages[,] * * * [a]llowing prejudgment interest in such situations would grant the insured a double recovery. Thus, we conclude that, in such cases, where the insured's coverage exceeds his or her damages, prejudgment interest should generally not be awarded. This rule is buttressed by analogy to the normal claim prejudgment interest is not awarded unless the trial court finds that the insurer has failed to make a good-faith attempt to settle. Also, the rule is in accord with the principle that the purpose of uninsured-motorist coverage is to put the insured in the same position as if the tortfeasor were insured, not a better one.
* * *
 We note that the general rules that we enunciate in this opinion should apply to cases * * * where there are no allegations of bad faith. * * * [I]n bad-faith cases, analogizing to R.C. 1343.03(C) is the proper way to make the victim "whole[.]"
Id. at *11-13.
While the foregoing test conveniently sets forth a bright line rule, we find it to be flawed for several reasons. First, even though prejudgment interest is clearly an element of compensatory damages, Woods,106 Ohio App.3d at 393, this test does not treat prejudgment interest as an element of damages. Second, under this test, there is no logical relationship between prejudgment interest and whether the amount of damages is less or more than the insurance policy coverage available. Third, this test analogizes cases where the insured's coverage exceeds his damages "to the normal [tort] claim — [where] prejudgment interest is not awarded unless the trial court finds that insurer has failed to make a good-faith attempt to settle." Bowman at *13. We believe the supreme court implicitly rejected this reasoning when it held that UMI claims are contract claims governed by R.C. 1343.03(A). Landis,82 Ohio St.3d at 341. As already noted, R.C. 1343.03(A) does not require proof of a bad-faith failure to settle.
Finally, this test does not take into account the time value of the money held by the insurer between the accrual of the claim and the eventual payment by the insurer. "Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment." Royal, 73 Ohio St.3d at 117. After all, "[prejudgment] interest is allowed, not only on account of the loss which a creditor may be supposed to have sustained by being deprived of the use of his money, but on account of the gain being made from its use by the debtor." Landis, 82 Ohio St.3d at 342, quoting Hogg v. ZanesvilleCanal Mfg. Co. (1832), 5 Ohio 410. For the foregoing reasons, we do not find the First Appellate District's test to be persuasive and we decline to adopt it.
We have reviewed applicable cases following the supreme court's opinion in Landis. Although awarding prejudgment interest from the date of the accident is allowed under Landis, this approach has been rejected by appellate courts on the ground that the amount of coverage owed by the insurer has not been yet determined. See Nichols v. Milwaukee Ins. Co.
(Aug. 21, 2000), Stark App. No. 2000CA00066, unreported; Foster v. StateAuto. Mut. Ins. Co. (Jan. 5, 2000), Summit App. No. 19464, unreported;Reineck v. Westfield Ins. Co. (Aug. 28, 1998), Huron App. No. H-97-039, unreported. Except for the First Appellate District's opinion, none of the appellate cases following Landis propose any kind of test regarding the time from which prejudgment interest should be awarded.
While acknowledging that there would be no UMI claim absent tortious conduct which caused the damages, the supreme court nevertheless clearly held that UMI claims are contract claims. Landis, 82 Ohio St.3d at 341. The supreme court has also held that "to make the party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment." Royal Elec. Constr. Corp., 73 Ohio St.3d at 117. It follows then that in the case of an insured's UMI claim against his insurer, the time the cause of action arises "is the time of the breach of the contract, [the insurance policy the insured has with his insurer,] not the time of the tort itself. Eldridge v. Grange Mut. Cas. Co. (C.P. 1997), 86 Ohio Misc.2d 112, 114. In other words, the injury in those cases is not the physical injury caused by the accident, but rather the injury caused by the insurer's breach of contract.
Applying the foregoing propositions to the issue before this court, we find that the cause of action accrual date for computation of prejudgment interest pursuant to R.C. 1343.03(A) starts on the date the insured makes a UMI claim under his policy against his insurer after having exhausted the tort-feasor's coverage.[2] At that point, the money becomes due and payable, even though the amount owed to the insured is disputed. It is well-established that in cases involving R.C. 1343.03(A), it is not necessary that the sum be a sum certain before prejudgment interest may be calculated. Royal Elec. Constr. Corp., 73 Ohio St.3d at 117. We believe such rule is the better rule for the following reasons.
First, accruing prejudgment interest from the day the insured makes a claim against his insurer after exhausting the tort-feasor's coverage squares with the supreme court's holding that UMI claims are contract claims which are governed by R.C. 1343.03(A). The time when the insured makes his claim against the insurer under the insurance policy may be the first time the insurer finds out about the claim. Should the insurer choose to reject the claim, the insured can then file a suit against the insurer.
Second, unlike the analysis of the First Appellate District, the foregoing analysis takes into account the time value of the funds held by the insurer between the day of the insured's claim and the eventual payment by the insurer.
Third, it would encourage the parties to make prompt settlement of claims.
We next consider the following limitation on prejudgment interest on contract claims. "When an award, including prejudgment interest, falls within the policy limits of the insurer, the insurer's liability for the interest is generally clear. [However], when the insurer's liability for prejudgment interest would bring its liability over the damage limits of the policy, the question has arisen whether the insurer may be held liable for interest to the extent that its liability would exceed the limits set forth in the insurance contract." Annotation, Liability of Insurer for Prejudgment Interest in Excess of Policy Limits for Covered Loss (1994), 23 A.L.R.5th 75, 88. "Many courts have held that prejudgment interest is an element of damages, and have accordingly concluded that an insurer has no liability for prejudgment interest in excess of its policy damage limits." Id.
Such was the issue in Guin v. Ha (Ak. 1979), 591 P.2d 1281. In that case, the Supreme Court of Alaska, reaching the conclusion that prejudgment interest should not be paid in excess of the policy limits, opined as follows:
 An obligation to pay such interest does not arise by virtue of the mere fact that the parties have entered into an insurance contract. In order to hold the insurer liable for such prejudgment interest, the insurer must have assumed such an obligation in the contract or, alternatively, public policy must intervene and impose the obligation despite the terms of the insurance contract.
* * *
 [C]lassified [as compensatory damages], prejudgment interest falls within the liability damage clause in the insurance contract and is subject to the amount limitation contained therein. * * *
 Classification of prejudgment interest as an item of damages clarifies, in other respects, the obligations the insurer owes to the insured. While the insurer will not be liable for prejudgment interest in excess of the applicable damage limitation, the insurer will be liable for any prejudgment interest which, when added to damages rendered against the insured, does not exceed the limitation on liability. * * *
* * *
 We recognize that * * * the insured has relinquished to the insurer his right to settle claims and his right to control the litigation during the post-injury/prejudgment period. From the date of the injury, it is the insurer who will have the use and benefit of any sums, up to the policy limit, later found to be owed to the injured party. Economic fairness would suggest that the insurer be held liable for prejudgment interest, without regard to policy limits, as it has had the use and benefit of funds during the period for which the defendant insured is being held liable. These notions of economic fairness, however, are not sufficient grounds for restructuring the contractual relationship between insured and insurer.
* * *
 Encouraging early settlement where liability is clear is a salutary goal, but it does not require the insurer to bear the burden of a risk it has not assumed. Countervailing policy considerations favoring the insurer were expressed in Dittus v. Geyman, 68 Mich. App. 433, 242 N.W.2d 800, 805 (1976):
 The effect of allowing prejudgment interest in an amount beyond policy limits would be to force an insurance company to acquiesce to a plaintiff's demand at an early stage of the proceedings where it may have a meritorious defense, rather than run the risk of paying a large amount of prejudgment interest due to the delays engendered by crowded dockets should the plaintiff eventually recover.
 Further, the insured has undertaken to bear the costs of defending the litigation which presumably will increase substantially in the advanced stages of trial preparation if settlement is delayed.
 Finally, the insured defendant will not be at the mercy of the dilatory or uncooperative insurance company. In every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. This covenant encompasses an obligation on behalf of the insurer to accept reasonable offers of settlement in a prompt fashion. The insured defendant, for his part, both fulfills his contractual duty and protects his own interest by cooperating fully with his insurer. If the insurer causes undue delay in either settlement of a claim or in bringing a case to trial, it may constitute a breach of the implied covenant of good faith. The insured may recover from his insurer any prejudgment interest attributable to the bad faith of the insurer, regardless of policy limits.
 Furthermore, the insured defendant need not be caught in the bind of prejudgment interest liability. The insured may protect himself by obtaining additional insurance coverage in an amount sufficient to include prejudgment interest which otherwise would exceed applicable policy limits.
Id. at 1284-1291.
Limiting the total amount of damages and prejudgment interest awarded to the insured to the policy limits puts both parties on an equal footing in determining their benefits and costs under their UMI policies.
While we decline to adopt the First Appellate District's bright line test as set forth in Bowman in favor of the rule we enunciated in this opinion, we agree with the First Appellate District that any such rule should only apply to cases where there are no allegations of bad faith on the part of the insurer. See Phoenix Phase I Assoc. v. Ginsberg, Guren Merritt (1985), 23 Ohio App.3d 1 (finding it repugnant to the purpose of R.C. 1343.03 that an insurance company should be permitted to delay settlement efforts, or fail to make any settlement efforts at all, and limit its liability to maximum stated in policy, and thus finding that in cases of bad faith, insurance company can be liable for prejudgment interest under R.C. 1343.03(C) in excess of any stated limits in policy).
In light of all of the foregoing, we therefore hold that benefits under an insured's UMI coverage become "due and payable" under R.C. 1343.03(A), and accrual of prejudgment interest starts, at the earliest, on the date the insured makes a claim against his insurer after having exhausted the tort-feasor's coverage. We also hold that for claims made under R.C.1343.03(A), the total amount of damages and prejudgment interest awarded to an insured is limited to the insurance policy damage limits. The trial court therefore erred by denying prejudgment interest to appellants based on the analysis it used in making the ruling. This case is remanded to the trial court to make a determination of whether and when prejudgment interest should be awarded in accordance with this opinion. To that extent appellants' third assignment of error is well-taken and sustained.
 ____________________________ WALSH, J.
YOUNG, P.J., and VALEN, J., concur.
[1] We sua sponte remove this matter from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] "Exhaustion of coverage" is a term of art with respect to UMI coverage. See Bogen v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22,28.