OPINION
Appellants National Surety Corporation, et al. ("National Surety") appeal the June 7, 2001 Judgment Entry of the Stark County Court of Common Pleas, which confirmed an arbitration award in favor of Appellee Lisa Zurcher, Administrator of the Estate of Ronald Zurcher, upon a finding the umbrella policy issued by Appellant Fireman's Fund Insurance Company of Ohio ("Fireman's Fund") provided UM/UIM coverage in the amount of $2,000,000; and which granted appellee's motion for prejudgment interest. The following facts give rise to this appeal.
On August 25, 1997, decedent Ronald Zurcher ("decedent") was involved in a two car collision when a vehicle driven by Lawrence R. Jones, Jr. failed to yield at a stop sign and struck decedent's van. Decedent died as a result of the injuries sustained during the collision. Lawrence Jones was insured under a motor vehicle policy issued by Progressive Insurance. Progressive paid appellee $50,000, the limit of liability coverage provided under Jones' policy.
At the time of the accident, Richard Penrod resided with appellee and decedent. Penrod, who was decedent's stepson, was employed by Leiden Cabinet Company ("Leiden"). National Surety provided Leiden's primary business automobile coverage. Fireman's Fund provided an umbrella policy. The Fireman's Fund policy became effective on October 12, 1995, for a one year period expiring on October 12, 1996. Thereafter, the policy was renewed for an additional one year period, which commenced on October 12, 1996, and expired on October 12, 1997. The Fireman's Fund policy provided general liability limits in the amount of $2,000,000, however, a signed selection form dated November 15, 1995, indicates Leiden elected to reduce the liability limit for underinsured coverage to $1,000,000.
On April 7, 2000, following the Ohio Supreme Court's decision inScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, appellee provided appellants notice of an underinsured motorist claim. Appellants acknowledged coverage.
Pursuant to the arbitration provisions in the subject insurance policies, appellee demanded her claim be arbitrated. Each party selected an arbitrator, but a decision regarding the selection of the third arbitrator could not be reached. Consequently, on January 16, 2001, appellee filed a miscellaneous action in the Stark County Court of Common Pleas, titled Application for Appointment of An Arbitrator. The trial court appointed Attorney Mike Zirpolo to serve as arbitration chairman via judgment entry filed January 16, 2001.
The matter proceeded to arbitration on April 16, 2001. The arbitration panel awarded appellee $3,900,000. Appellants issued checks to appellee totaling $1,950,000. This amount included $950,000 from National Surety's primary policy of $1,000,000 less set off of $50,000 for the amount paid by the tortfeasor's insurance, and $1,000,000 under the Fireman's Fund umbrella policy. In addition, appellant issued interest checks in the amount of $102,916.67 and $108,333.33, representing interest on the $1,950,000 at 10 percent per annum from April 7, 2000, to May 7, 2001.
Appellee filed an Application to Confirm the Arbitration Award and Motion for Prejudgment Interest. Via judgment entry filed June 7, 2001, the trial court confirmed the arbitration award, specifically finding the umbrella policy provided UM/UIM coverage in the amount of $2,000,000. Additionally, the trial court granted appellee's motion for prejudgment interest, ordering such to be calculated from the date of the accident.
It is from this judgment entry appellants appeal, raising the following assignments of error for our consideration:
 I. THE COURT ERRED IN GRANTING PLAINTIFF'S APPLICATION TO CONFIRM ARBITRATION AWARD AND REDUCE TO JUDGMENT.
 II. THE COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST.
 III. THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR APPOINTMENT OF AN ARBITRATOR WITHOUT NOTICE TO APPELLANT, AND WITHOUT ANY OPPORTUNITY FOR APPELLANTS TO BE HEARD.
 I
In their First Assignment of Error, appellants contend the trial court erred in granting appellee's Application to Confirm Arbitration Award and Reduce to Judgment. Appellants set forth two arguments to support its assertion the trial court erroneously found UM/UIM coverage of $2,000,000 under the Fireman's Fund umbrella policy. First, appellants maintain Leiden's selection of UM/UIM coverage in the amount of $1,000,000 was valid and fully enforceable. Additionally, appellants assert the two year rule set forth in R.C. 3937.31 is inapplicable to the instant action. We shall address the later assertion first.
Appellee maintains, and the trial court agreed, Leiden's selection of UIM coverage in the amount of $1,000,000, rather than the offered $2,000,000, was invalid because the form was signed after the effective date of the Fireman's Fund umbrella policy. In support of her position, appellee cites Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565. The Ohio Supreme Court in Gyori held, "in order for a rejection of UM coverage to be expressly and knowingly made, such rejection must be in writing and must be received by the insurance company prior to the commencement of the policy year." Id. at 569. Appellee explains Leiden's failure to timely select lower UM/UIM limits results in Leiden's acquiring UM/UIM coverage, under the Fireman's Fund policy, in the amount of $2,000,000 by operation of law.
Appellee further argues Fireman's Fund was required to provide $2,000,000 in UM/UIM coverage for the mandatory two year guaranteed policy period set forth in R.C. 3937.31(A), which reads:
 (A) Every automobile insurance policy shall be issued for a period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years. Where renewal is mandatory, `cancellation,' as used in sections 3937.30
to 3937.39 of the Revised Code, includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period. No insurer may cancel any such policy except pursuant to the terms of the policy, and in accordance with sections 3937.30 to 3937.39 of the Revised Code, and for one or more of the following reasons:
* * *
The Ohio Supreme Court, in interpreting the aforementioned statute, held:
 Accordingly, we hold that, pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state, must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. We further hold that the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. Pursuant to our decision in Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, the statutory law in effect on the date of issue of each new policy is the law to be applied. Wolfe v. Wolfe
(2000), 88 Ohio St.3d 246, 250. (Emphasis sic.)
We find the mandatory two year guaranteed policy period inapplicable to Leiden's selection of reduced UM/UIM coverage despite the fact the selection was signed subsequent to the inception date of the policy. First, R.C. 3937.31(A) applies only to an "automobile insurance policy" as defined in R.C. 3937.30, which provides:
 As used in sections 3937.30 to 3937.39 of the Revised Code, `automobile insurance policy' means an insurance policy delivered or issued in this state or covering a motor vehicle required to be registered in this state which:
* * *
(D) Does not insure more than four motor vehicles;
* * *
The policies issued by appellants herein covered five specifically identified automobiles; therefore, such policies are not "automobile insurance polic[ies]" within the definition of R.C. 3937.31. Accordingly we find the Fireman's Fund umbrella policy is not subject to the two year rule.
Assuming, arguendo, the Fireman's Fund policy is governed by the two year rule, such would not prevent Leiden from making changes in the coverage or policy limits. R.C. 3937.31(B) provides:
 (B) Section 3937.30 to 3937.39 of the Revised Code do not prohibit:
 (1) Changes in coverage or policy limits, cancellation, or nonrenewal for any reason at the request or with the consent of the insured;
* * *
We need not reach the issue of whether Leiden's selection of reduced UM/UIM coverage was effective during the 1995-1996 policy year. Nonetheless, we find Leiden's selection was effective when the policy was renewed in 1996. See Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 179.
Our resolution of this issue is consistent with the objectives sought by the General Assembly in promulgating R.C. 3937.31. "[T]he statute is intended to protect insureds from unilaterally being left without the protections that automobile insurance coverage affords by requiring that insurers provide an adequate method of notification." Wolfe at 249-250.
We now must determine whether Leiden's selection was valid and enforceable. Under Ohio Law, insurance companies bear "the burden of showing that any rejection [of UM/UIM coverage] was knowingly made by the customer." Gyori at 567. (Citations omitted.) We find a written reduction, like a written rejection, must satisfy the terms of R.C.3937.18. A copy of the Fireman's Fund's selection form for UM/UIM coverage is attached to this opinion.
Appellee submits because appellants failed to offer any evidence relative to the individual who signed the form and in what capacity that individual so signed, appellants have failed to meet their burden. We disagree.
 Where an insurance company is able to produce an application for insurance which contains a separate and unambiguous rejection which has been signed by the insured, the insurance company has met its burden and presented a prima facie case that the rejection was expressly and knowingly made. Davis v. Safe Auto Ins. Co. (Mar. 31, 2000), Trumbull App. No. 98-A-0103, unreported.
The selection form indicates the selection of the lesser available limit of $1,000,000. The document is signed and dated November 15, 1995. Because appellants produced a separate, unambiguous and signed selection form, we find appellants have satisfied their burden. That is not to say appellee was barred from challenging whether Leiden properly executed the selection form.
In Linko v. Indemn. Ins Co. of N. Am. (2000), 90 Ohio St.3d 445, the Ohio Supreme Court stated:
 We conclude that the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds. Again, we cite Gyori, which requires a written offer and a written rejection of UM/UIM coverage. In Gyori this court made it clear that the issue of whether coverage was offered and rejected should be apparent from the contract itself. This court stated that the requirement of written offers `will prevent needless litigation about whether the insurance company offered UM coverage.' Id. * * * By requiring an offer and rejection to be in writing, this court impliedly held in Gyori that if the rejection is not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases — the offer and rejection are either there or they are not. Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds. Id. at 450.
Once an insurance company has produced a written rejection, extrinsic evidence cannot be used to show such rejection was not knowingly and expressly made. The issue before this court is not whether the selection was knowingly and expressly made, but whether the signature appearing on the form is that of an authorized representative. Once the signed selection form was placed before the trial court, we find the burden shifted to appellee to establish the signature was not that of an authorized representative. Appellee presented no such evidence. Appellee was required to do more than merely raise the issue in a rebuttal brief to the trial court. Because appellee failed to present evidence to establish the signatory was not authorized, we find the selection form is valid.
Appellants' First Assignment of Error is sustained.
 II
In their Second Assignment of Error, appellants maintain the trial court erred in granting appellee's motion for prejudgment interest.
Throughout the State of Ohio, there are differing points of view on the issue of when prejudgment interest begins to run on an UM/UIM claim. The Ohio Supreme Court, in the case of Landis v. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, explained the basis upon which prejudgment interest in UM/UIM cases is to be determined. However, in doing so, the Court did not set forth specific guidelines concerning what is necessary to determine an appropriate date to trigger the running of prejudgment interest.
Although lacking in these specific guidelines, the Landis case does contain the following pertinent points of law. First, a claim for UM/UIM benefits is a contract claim, not a tort claim. Thus, an insured can recover prejudgment interest, under R.C. 1343.03(A), the statute governing interest on contracts, book accounts and judgments. Id. at 341. Justice Pfeifer refers to the specific language of this statute, which provides, in pertinent part:
 * * * when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, except that, if a written contract provides a different rate of interest in relation to the money that becomes due and payable, the creditor is entitled to interest at the rate provided in that contract.
Second, lack of good faith effort to settle a case is not a predicate to an award of prejudgment interest under R.C. 1343.03(A). Finally, Justice Pfeifer states, with reference to the date from which prejudgment interest should run that:
 Whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine. Id. at 342.
Based upon the above language, it is clear that it is within the trial court's discretion to determine from what date prejudgment interest should be calculated. Although the Ohio Supreme Court sets forth these possible dates, it does not provide any guidelines which a trial court should follow to determine which one of these possible dates is appropriate.
However, the Court does set forth several factors a trial court should not consider in determining the date of prejudgment interest. Specifically, a trial court should not consider whether the benefits were denied in good faith. Such determination "* * * is irrelevant because lack of good faith effort to settle is not a predicate to an award of prejudgment interest pursuant to R.C. 1343.03(A), as it is under R.C.1343.03(C)." Id. at 341. The Court also explained that "* * * [insurance companies] will be subject to a prejudgment interest award, not as a punishment but as a way to prevent them from using money then due and payable to another for their own financial gain." Id.
Finally, the Court noted that once a declaratory judgment action determines money is due and payable, the fact that the amount remains undetermined until arbitration is completed does not bar recovery of prejudgment interest. Id. This conclusion appears to indicate that once it has been determined that money is due and payable, that fact alone controls the trigger date for prejudgment interest. That is, arguably, the date of a judgment entry establishing liability. Although the Court could have made this the general rule for calculating prejudgment interest, it did not do so and therefore, we believe some other factor(s) must be determinative of this issue.
Because the Ohio Supreme Court has failed to provide the standard to be applied in awarding prejudgment interest, this standard has been left to the trial courts and courts of appeals to determine. Thus, we must start with the position that the determination of the trigger date is within the trial court's discretion. See Nichols v. Milwaukee Ins. Co. (Aug. 21, 2000), Stark App. No. 2000CA00066, unreported. Under the abuse of discretion standard, the trial court's discretion is not absolute, but it is very broad. Because the trial court's discretion is not absolute, appellate courts, as well as the Ohio Supreme Court, must review the trial court's finding to determine whether the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Clearly, were the trial court's discretion absolute, there would be no practical appellate review by either the appellate courts or the Ohio Supreme Court. Under such a scenario, the application of prejudgment interest would be totally dependent upon the luck of the draw of the trial court judge. It has always been a guiding principle of law that all laws should be applied equally and fairly to all citizens of the State of Ohio and therefore, the trial courts must, along with the appellate courts, develop the standard to be applied in these types of cases.
This court, in the Nichols case, a case of first impression, determined that the trial court must set forth its reasons for selecting a particular date. In Nichols, this court held:
 In its judgment entry filed January 27, 2000, the trial court sub judice found interest to run from the date of the accident, without explanation. It is uncontested appellant was first put on notice of the uninsured motorists claim on February 15, 1996 * * *. When the trial court chose the date of the accident, he had no basis in fact to determine said date was the date of the first notice or demand for payment. In fact, the undisputed dates in both parties' briefs at the trial level admit first notice was not the date of the accident. We hereby remand this case to the trial court to decide when the first notice or demand was made upon appellant, and calculate the interest accordingly. Id. at 2. (Emphasis added.)
From this language, it is clear this district requires trial courts, at a minimum, to explain in their judgment entries a factual basis for the selection of a trigger date for prejudgment interest. Further, inNichols, this Court set forth the "date of first notice or demand" as the essential element for determining from what date prejudgment interest should begin to run.
However, this position is not absolute within our district. TheNichols decision was not unanimous. In Norton v. Allstate Ins. Co. (Mar. 26, 2001), Stark App. No. 2000CA00348, unreported, a different panel of judges from this district did not find the "date of first notice or demand" a requirement for triggering the date from which prejudgment interest should run. In Norton, this court held:
 In its October 11, 2000 Judgment Entry, the trial court conducted an extensive analysis of the applicability of prejudgment interest and the appropriate trigger date for such an award.
* * *
 The trial court determined that the language of the insurance policy fixes the contractual obligation as of the date of the accident.
* * *
 In looking at the totality of the circumstances in the instant matter, this Court finds that the trigger date is the date of the accident and that judgment interest shall be awarded from that date * * *. Id. at 2.
Thus, the Norton decision determined that the totality of the circumstances was the proper test for the trial court to use in determining when prejudgment interest would be triggered. This determination is not in and of itself a conflict with the Nichols case. However, there is certainly a difference in the flow of the analysis. The panel in Nichols found the "date of first notice or demand" crucial in determining the date from which prejudgment interest should run. It did not, however, state that policy language negotiated between the parties could not change that date. The issue was not raised in Nichols.
A review of the record and briefs in this case indicates that neither party raised the issue of policy language. Norton's reliance on the language of the insurance contract would not be significant to the analysis of this case. However, the totality of the circumstances test, in Norton, certainly requires a statement by the trial court to set forth the basis upon which it chose the trigger date for prejudgment interest. Further, the requirement of the Nichols case that the trial court determine "the date of first notice or demand" also requires a statement by the trial court to set forth the factual basis upon which it determined the trigger date.
In the case sub judice, the trial court set forth the following factual basis, in its judgment entry, to support its conclusion that prejudgment interest should be awarded from the date of the accident:
 * * * defendant's first offer of settlement was made on April 11, 2001. This amount was approximately five days before the arbitration hearing and over one year after the defendants had been provided with information concerning this claim. Judgment Entry, June 7, 2001, at 5.
In addition to the above statement, the trial court also concluded that R.C. 1343.03(A) applies to this matter. Id. The trial court's discussion of the time frame concerning appellants' settlement offer implies that appellants did not timely attempt to resolve this matter after they first received notice of the claim. This implication may be accurate but improper, under the Landis case, as prejudgment interest may not be awarded as punishment.
Therefore, because the trial court's judgment entry implies that prejudgment interest is being awarded as punishment, we remand this matter for the trial court to explain its rational for choosing the date of the accident as the trigger date for the running of prejudgment interest. This rational should not be based on a punishment concept.
Appellants' Second Assignment of Error is sustained.
 III
In the Third Assignment of Error, appellants maintain the trial court erred in granting appellee's ex parte application for appointment of an arbitrator without notice to appellants and without providing appellants with an opportunity to be heard.
Appellants' UM/UIM endorsement provides:
 If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle or do not agree as to the amount of damages that are recoverable by that insured, then the matter may be arbitrated. * * * Either the party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.
We find neither appellants nor appellee were entitled to notice and a hearing before the trial court appointed the third arbitrator under the contract. Additionally, the trial court filed its judgment entry appointing the third arbitrator on January 16, 2001. Appellants did not seek reconsideration of or object to the decision; therefore, we find appellants have waived the issue on appeal. Assuming, arguendo, appellants were entitled to notice and a hearing and had timely objected, we find appellants were not harmed by the trial court's failure to so provide them. The arbitrators unanimously agreed on the amount of total damages to appellee. A binding award requires only two arbitrators.
Appellants' Third Assignment of Error is overruled.
The Judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with this opinion.
By: Wise, J., Gwin, J., concurs. Hoffman, P. J., concurs in part and dissents in part.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Costs shall be divided equally.