Jeffrey SIPLER and Lisa
Sipler, Plaintiffs,

v.

TRANS AM TRUCKING, INC. and
Paul C. Robb, Defendants.

Civ. No. 10–3550 (DRD).

United States District Court,
D. New Jersey.

July 24, 2012.

Greenbaum, Rowe, Smith & Davis LLP
by John D. North, Esq., Andrew D. Bigda,

Esq., Nicholas P. Grippo, Esq., Wood-bridge, NJ, for Plaintiffs.

Rawle & Henderson LLP by Brian A. McCall, Esq., Harrisburg, PA, for Defendants.

DICKINSON R. DEBEVOISE, Senior District Judge.

This matter arises out of a personal injury action. On March 6, 2012, the eve of trial, the parties agreed to settle the action. However, they have yet to consummate the settlement due to a protracted disagreement on certain terms. Consequently, Plaintiffs filed a Motion to Enforce Settlement. For the reasons set forth below, Plaintiffs' motion is GRANTED.

## I. BACKGROUND

On March 8, 2006, a collision occurred on Interstate 80 in Roxbury, New Jersey when Defendant Paul C. Robb, who was employed by Defendant Trans Am Trucking, Inc., rear-ended a bus on which Plaintiff Jeffrey Sipler was a passenger. Plaintiffs sued and trial was set for March 21, 2012.

On March 6, 2012, following the Court's determination of a number of critical motions in limine, the parties agreed to settle the matter. The material terms of the settlement were that Defendants would pay Plaintiffs $225,000 in exchange for a release from all claims arising out of the accident. No other terms were discussed or agreed to at that time. Defense counsel agreed to draft a proposed release. Consequently, on March 7, 2012, the Court entered a sixty-day Order of Dismissal without prejudice and retained jurisdiction to enforce settlement between the parties pursuant to *Kokkonen v. Guardian Life*

*Ins., Co. of Am.,* 511 U.S. 375, 378–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

On March 23, 2012, defense counsel sent a proposed release to Plaintiffs' counsel via email. The release included a confidentiality clause and several provisions relating to Mr. Sipler's health insurance, including those stating that (1) he cannot claim reimbursement from Medicare for injuries arising out of the March 8, 2006 accident; (2) his private health insurance will not pay for claims arising out of accident-related injuries because those injuries are preexisting; and (3) Medicare will not pay for any future treatment for injuries arising out of the accident.

Plaintiffs' counsel refused to accept either the confidentiality provision or those related to his health insurance and obligations to Medicare. Defense counsel refused to consummate the settlement agreement without those provisions.

## II. DISCUSSION

Plaintiffs now move to enforce the terms of the settlement agreement that the parties agreed to on March 6, 2012. In doing so, they argue that (1) no confidentiality[1] or other provisions related to Mr. Sipler's health insurance and obligations to Medicare were agreed to by the parties on March 6, 20120; (2) federal law does not require Mr. Sipler to disqualify himself from Medicare benefits or establish a Medicare set aside for his future treatment; and (3) Defendants have no authority to protect the rights of Medicare. Defendants respond that federal law requires personal injury settlements to protect the rights of Medicare with respect to both past and future medical expenses.

---

1. At oral argument, the Court ruled from the bench that the confidentiality provision would not be a part of the settlement because the parties agreed that the provision had not been negotiated at the time of settlement.

## A. Plaintiffs' Motion to Enforce Settlement

■ "A settlement agreement between parties to a lawsuit is a contract." *Nolan by Nolan v. Lee Ho,* 120 N.J. 465, 472, 577 A.2d 143 (1990) (citation omitted). Thus, "a settlement agreement is governed by principles of contract law." *Thompson v. City of Atlantic City,* 190 N.J. 359, 379, 921 A.2d 427 (2007) (citation omitted). "A settlement agreement usually involves the payment of money by one party in consideration for the dismissal of a lawsuit by the other party." *Id.* "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." *Lahue v. Pio Costa,* 263 N.J.Super. 575, 596, 623 A.2d 775 (App.Div.1993), *certif. denied,* 134 N.J. 477, 634 A.2d 524 (1993). Here, there is no dispute that the essential terms of a settlement were agreed to by the parties on March 6, 2012. Thus, the Court has the authority to enforce the settlement, with or without the provisions proposed by Defense counsel involving Medicare.

The Medicare Secondary Payer ("MSP") statute "assigns primary responsibility for medical bills of Medicare recipients to private health plans when a Medicare recipient is also covered by private insurance. These private plans are therefore considered 'primary' under the MSP and Medicare acts as the 'secondary' payer responsible only for paying amounts not covered by the primary plan." *Fanning v. United States,* 346 F.3d 386, 389 (3d Cir.2003).

■ Thus, the MSP bars Medicare payments where "payment has already been made or can reasonably be expected to be made" by a primary plan. 42 U.S.C. § 1395y(b)(2)(A) (parenthetical in original). The MSP defines a "primary plan" as "a

workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance[.]" 42 U.S.C. § 1395y(b)(2)(A)(ii) (parenthetical in original). This provision "is intended to keep the government from paying a medical bill where it is clear an insurance company will pay instead." *Fanning,* 346 F.3d at 389 (quotation omitted).

Consequently, "the MSP provides that when Medicare makes a payment that a primary plan was responsible for, the payment is merely conditional and Medicare is entitled to reimbursement for it." *Id.* (citing 42 U.S.C. § 1395y(b)(2)(B)). Medicare payments are subject to reimbursement to the appropriate Medicare Trust Fund once the government receives notice that a third-party payment has been or could be made with respect to the same item or service. 42 U.S.C. § 1395y(b)(2)(B)(i). If MSP reimbursement is not made, the MSP authorizes the government to bring an action against "any entity which is required or responsible ... to make payment ... under a primary plan" and against "any other entity (including a physician or provider) that has received payment from that entity." 42 U.S.C. § 1395y(b)(2)(B)(ii). Entities such as "a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment" may also be held liable. 42 CFR § 411.24. The MSP also gives the government a separate right of subrogation. 42 U.S.C. § 1395y(b)(2)(iii).

It is undisputed that Mr. Sipler became eligible to receive benefits under Medicare this year. However, it is also undisputed that Medicare has never paid any medical bill on behalf of Mr. Sipler. Mr. Sipler's medical bills arising out of the accident in this case were initially paid by a first-party automobile insurance policy and subsequently by a group health insurance plan, in which he is still enrolled today and

expects to be for the foreseeable future. Nonetheless, under the MSP, Medicare is currently a secondary payer to both Mr. Sipler's health insurance plan and his settlement with Defendants—which is being funded by a liability insurance policy—for future medical expenses arising out of the accident. Therefore, Mr. Sipler may not seek payments from Medicare for such expenses to the extent they are provided for by his health insurance policy and/or the settlement.

At issue, however, is whether the MSP requires language in the release provisions of Mr. Sipler's settlement agreement specifying (1) his obligation not to seek such payments from Medicare and (2) a particular portion of the settlement amount to be set aside for future medical expenses arising out of the accident.

■ Defendants cite to a memorandum, dated September 29, 2011, from the Centers for Medicare & Medicaid Services ("CMMS") stating that, under the MSP, "[a]ll parties do have significant responsibilities under the MSP to protect Medicare's interests when resolving cases that includes [sic] future medical expenses. A *recommended method* to protect Medicare's interest is a set-aside arrangement, which allocates a portion of the settlement for future medical expenses. The amount of the set-aside is determined on a case-by-case basis." (Def.'s Cert., Ex. C) (emphasis in original). However, it is well-settled that "[i]nterpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines ... lack the force of law...." *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *see also Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995) (definition in Medicare Provider Reimbursement Manual "is a prototypical example of an interpretive rule" that does not require notice and comment, and therefore "do[es] not have the force and effect of law and [is] not accorded that weight in the adjudicatory process[.]").

Indeed, no federal law requires set-aside arrangements in personal injury settlements for future medical expenses. To be sure, Medicare set-asides are prudent in settlements for future medical expenditures in the worker's compensation context because, under the MSP, Medicare becomes a secondary payer for such expenditures to the extent a "compensation award stipulates that the amount paid is intended to compensate the individual for all future medical expenses," 42 CFR § 411.46(a), or "the settlement agreement allocates certain amounts for specific future medical services," 42 CFR § 411.46(d)(2).

■■ The settlement in this case, however, does not arise in the worker's compensation context. And it does not indicate a particular amount to compensate Mr. Sipler for future medical expenses arising out of the accident. Nor should it. In contrast to the worker's compensation scheme that "generally determine[s] recovery on the basis of a rigid formula, often with a statutory maximum .... [t]ort cases ... involve noneconomic damages not available in workers' compensation cases, and a victim's damages are not determined by an established formula." *Zinman v. Shalala*, 67 F.3d 841, 846 (9th Cir.1995) (citation omitted). Thus, to require personal injury settlements to specifically apportion future medical expenses would prove burdensome to the settlement process and, in turn, discourage personal injury settlements.[2] *See McDermott, Inc.*

---

**2.** Indeed, it would be particularly discouraging if litigants were required to obtain Medicare's pre-approval of a settlement.

*v. AmClyde,* 511 U.S. 202, 215, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994) (noting that "public policy wisely encourages settlements"). In sum, the parties in this case need not include language in the settlement documents noting Mr. Sipler's obligations to Medicare or fashion a Medicare set-aside for future medical expenses.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Enforce Settlement is GRANTED.

The Court will enter an order implementing this opinion.