[Cite as *Tye v. Upper Valley Med. Ctr.*, 2014-Ohio-2822.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

SCOTT TYE, et al.                        :

    Plaintiffs-Appellants/         :            C.A. CASE NO.    25997
    Cross-Appellees
v.                                       :            T.C. NO.    10CV9282

UPPER VALLEY MEDICAL CENTER,             :            (Civil appeal from
et al.                                                 Common Pleas Court)

    Defendants-Appellees/          :
    Cross-Appellants
                                         :

                                         :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____27th____ day of ____June____, 2014.

. . . . . . . . . .

T. JEFFREY BEAUSAY, Atty. Reg. No. 0039436, 495 S. High Street, Suite 300, Columbus, Ohio 43215
    Attorney for Plaintiff-Appellants/Cross-Appellees

PAUL W. McCARTNEY, Atty. Reg. No. 0040207, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202
    Attorney for Defendants-Appellees/Cross-Appellants, Howard Kessler, DO, David Chauvin, DO and West Central Emergency Physicians, Inc.

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Scott Tye, filed November 14, 2013, as well as the Notice of Cross-Appeal of Howard Kessler, DO; David Chauvin, DO; and West Central Emergency Physicians, Inc. (collectively, "Defendants"). The parties appeal from the trial court's October 22, 2013 "Decision, Order and Entry in regard to Plaintiffs' Motion for Post Settlement Interest," in which the trial court determined that post settlement interest accrued on November 8, 2012, and not the date that the parties reached a settlement agreement, namely July 21, 2012. We hereby modify the decision of the trial court to reflect that postsettlement interest accrued as of July 21, 2012 on the cash portion of the settlement. As modified, the trial court's judgment will be affirmed.

{¶ 2} On November 29, 2010, Scott Tye, Barbara Tye, Matthew Tye and Joshua Tye filed a medical malpractice complaint against multiple parties, namely individuals and entities associated with the medical care of Scott Tye received in 2009 for a spinal epidural abscess. The Defendants were among those named as parties. None of the other defendants are parties to this appeal. On August 6, 2012, the court issued an "Order of Dismissal (Case Settled)," which provides that the matter was "conditionally dismissed without prejudice until such time [as] a final dismissal entry with prejudice is filed."

{¶ 3} On October 1, 2012, the Tyes filed a "Motion of Plaintiffs for Post-Settlement Interest." The motion provides that the matter was "settled on July 21, 2012 at mediation. * * * After considering whether any of the settlement funds would be put into a structured settlement, and managing subrogation liens, plaintiffs requested the settlement checks via an email dated August 24." The motion further provides that "no checks have been received. The defendants are now claiming that a Medicare Set-Aside is

required as part of the settlement (which was not agreed to at the mediation and is not agreed to now), but this has no bearing on post-settlement interest, which runs from the settlement date."

{¶ 4} On October 16, 2012, defendants other than the Defendants herein filed a motion requesting the "Court to order Plaintiffs to establish a Medicare Set Aside (MSA) account out of a portion of the settlement proceeds." Therein they asserted that they "had the matter examined by their outside consultant," and attached to the motion is correspondence, dated September 20, 2012, from James Pocius, Esq., of Marshall Dennehey Warner Coleman and Goggin, to Heidi Bevis of Professional Solutions Insurance Co. The correspondence is addressed to the Tye matter and provides in part as follows: "In the thousands of workers' compensation cases where I have supplied Medicare estimates to the Agency, the Agency has always indicated that an MSA should be done in situations such as this because the private insurance could be cancelled or lost and then Medicare would be the primary payer. Therefore, I believe a set aside is necessary in this case." The correspondence further provides, "I saw no evidence in this file that anyone checked with Medicare to determine if conditional payments were made," and "I am unable to compute a medical set aside because I do not have any medical records showing claimant's current treatment." Also attached to the motion is correspondence dated July 19, 2012, from John Cattie, Esq., of the Garretson Resolution Group ("GRG"), to counsel for the Tyes, which provides in part that "GRG serves as a neutral third party when addressing [Medicare Secondary Payer] issues, and has been engaged by both plaintiffs and defendants on thousands of cases directly involving MSP compliance obligations such as conditional

payment reimbursement, evaluation of future costs of care (*i.e.*, whether an MSA is appropriate) and Section 111 reporting." The correspondence provides that "GRG does not recognize Mr. Tye as an MSA candidate since a permanent burden shift of the responsibility to pay for future injury-related medical expenses from the tortfeasor to Medicare is not expected."

{¶ 5} The motion concludes that "[a]uthority for this court to make such a finding [regarding the MSA] is found in" *Sipler v. Trans Am Trucking, Inc.,* 881 F.Supp.2d 635 (D. N.J. 2012), and *Finke v. Hunter's View*, D. Minn. No. 07:4267, 2009 WL 6326944 (Aug. 25, 2009), both of which are attached to the motion. *Sipler* is a personal injury action in which the court determined that an MSA was not required. The court noted that "no federal law requires set-aside arrangements in personal injury settlements for future medical expenses" and further noted the following distinction:

> In contrast to the worker's compensation scheme that "generally determine[s] recovery on the basis of a rigid formula, often with a statutory maximum . . . [t]ort cases . . . involve noneconomic damages not available in workers' compensation cases, and a victim's damages are not determined by an established formula." * * * Thus, to require personal injury settlements to specifically apportion future medical expenses would prove burdensome to the settlement process and, in turn, discourage personal injury settlements.
>
> *Sipler*, at 638.

Finally, *Finke* is also a personal injury action in which the court determined that "there is no reason for the parties to set aside any certain amount for future Medicare claims." *Finke*,

*3.

{¶ 6}     On October 23, 2012, the Tyes opposed the motion, asserting that there "is no federal statute mandating MSAs for liability cases," and that the "only support for defendants' motion is a letter * * * from a lawyer in Scranton, Pennsylvania, giving an opinion based on incomplete and incorrect facts, an opinion given to an insurance company for one of the defendants."   The Tyes' memorandum provides as follows:

> The Scranton lawyer states, "I saw no evidence in this file that anyone checked with Medicare to determine if conditional payments were made." The court should know that we (and Garretson) have "checked" with Medicare about their lien.  To date, Medicare has paid $1,887 toward Mr. Tye's medical care over the last several years, and that was for an infected hip (i.e., not caused by defendants' negligence).  So we are in the federal administrative process of working out the Medicare lien.  Medicare has offered to accept $1,152 to settle their lien.  In any event, money will be set aside to cover the Medicare lien.  This information was discoverable by Scranton (sic) with a telephone call.

{¶ 7}     On October 26, 2012, a memorandum in opposition to the Tyes' motion for post-settlement interest was filed, along with the "Affidavit of Paul W. McCartney, Esq. in Support of Memorandum in Opposition to Plaintiffs' Motion for Post-Settlement Interest of Howard Kessler, D.O., David Chauvin, D.O. and West Central Emergency Physicians, Inc." The memorandum provides that "Ohio law is clear on the issue raised in the Plaintiffs' Motion for Post-Settlement Interest.  The date from which post-settlement interest is to be

calculated is the date on which the written settlement agreement is executed." The affidavit provides as follows:

1. On July 21, 2012, the parties participated in a private mediation and reached a confidential settlement. At the conclusion of the mediation, there were two issues that needed to be finalized: Plaintiffs were to decide whether they wanted to structure any portion of the settlement, and the parties jointly needed to determine the amount, if any, needed to be set aside to protect Medicare's interests.

2. On August 24, 2012, Plaintiffs advised the parties that they had decided not to structure any portion of the settlement. Plaintiffs' attorney then skipped several important steps by demanding all parties produce checks in the amount of their proportionate share of the settlement. Namely, no written Settlement Agreement had yet been approved by the attorneys and signed by the parties, and there was still no agreement between the parties regarding the Medicare Set Aside.

3. To date, there still is no written settlement agreement, as the parties have reached an impasse regarding the Medicare Set Aside, which is the subject of the Defendants' pending motions to require the Plaintiffs to establish a Medicare set aside.

{¶ 8} Also on October 26, 2012, the Defendants filed a motion which provides that they "hereby join in the Defendants' Joint Motion that Plaintiffs Establish a Medicare Set Aside Account with Settlement Proceeds," and that they incorporate "each and every

argument asserted by the Defendants in their joint motion as if fully rewritten here." On October 30, 2012, the Tyes filed "Plaintiffs' Reply in Support of Motion for Post-Settlement Interest." On November 8, 2012, after a hearing, the trial court issued an Entry and Order which provides as follows:

* * *

The Court did not proceed with the hearing until 10:30 a.m. By that time no representative from the U.S. Attorney's office or Medicare, made an appearance. In addition, no pleading, or other response to Defendants' Motion, had been submitted, filed or docketed with this Court by an attorney or representative for the Medicare Coordination of Benefits Contractor, Social Security Administration or the Centers for Medicare and Medicaid Services.

The Court further finds that on or about October 15, 2012, U.S. Attorney's office, as the representative of the Medicare Coordination of Benefits Contractor was served, by certified mail, a copy of the Defendants' Joint Motion. And, attached to the motion was a Notice of Hearing for the motion before this court.

The Court finds that the undisputed evidence in this matter is that the Plaintiffs, Scott Tye and Barbara Tye are husband and wife and they have entered into a Settlement Agreement with the Defendants, for injuries, some of which are permanent in nature. And, that the Defendant, Scott Tye will require medical treatment for those injuries.

Second, that Scott Tye became eligible for Medicare Benefits in September, 2004.

Third, that at the present time Scott Tye's medical expenses, including those arising from injuries sustained in this matter, have been paid by a private health insurance carrier as a benefit of his wife's employment.

Fourth, there is reason to believe that the private health insurance carrier will continue to pay Scott Tye's future medical expenses in the foreseeable future.

Fifth, that Medicare does not currently have an established policy or procedure in effect for reviewing or providing an opinion regarding the adequacy of the future medical aspect of a liability settlement or recovery of future medical expenses incurred in liability cases such as this case.

Sixth, that the Plaintiffs are aware of their obligations to reimburse Medicare for all conditional payments made by Medicare and Plaintiffs have agreed to extinguish, out of the settlement proceeds, any and all additional medical liens currently existing, including any conditional payment already made by Medicare for injuries sustained by Plaintiff in this case.

The court concluded that "the parties are not required to set aside any portion of the settlement proceeds for future benefits which may be paid or payable by Medicare."

{¶ 9} On January 29, 2013, the "Motion of Plaintiffs to Enforce Settlement Against Reneging Parties and for Sanctions" was filed. Therein the Tyes sought an "order that Drs. Chauvin, Kessler, and their corporations(s) pay the cash portion of the settlement

immediately." On April 4, 2013, the Defendants opposed the Tyes' motion of January 29, 2013. The Defendants' memorandum in opposition provides that final "settlement documents were tendered to Plaintiffs to execute on February 28, 2013. Without these executed documents, there is no duty on the part of Defendants to tender the remaining settlement proceeds. To date, Plaintiffs have refused to return the executed settlement documents to allow the settlement to be consummated and finalized."

{¶ 10} A hearing was held on April 5, 2013. Counsel for the Tyes asserted at the hearing as follows: "The Court needs to ask two questions. The first question is what is the date of the settlement. And the answer to that question is July 21st, 2012. The second question that the Court needs to ask is is there a settlement agreement between the parties that overrides that settlement date. And the answer to that question is no. There is no settlement agreement right now between the Plaintiffs and the Defendants represented by Mr. McCartney." According to counsel for the Tyes, on August 24, 2012, an email was sent "to all of the Defense attorneys saying that we were ready to proceed with the checks and to send the checks to my attention and how those checks were to be made out. It is then that the Defendants started this business about the * * * Medicare Set Aside. * * * The Court ruled that one was not necessary and that ruling was on November the 8th." Counsel for the Tyes further asserted that "immediately after the Court ruled on that decision all of the Defendants except for those represented by Paul McCartney immediately sent the settlement checks and release paperwork to the Tyes. The paperwork was executed, the checks were deposited and all of those Defendants were dismissed." Counsel for the Tyes asserted that the "Ohio Supreme Court has stated very clearly that interest runs from the date of the

settlement period. * * * The only exception to that is if the parties enter into a written agreement whereby the settlement date is changed by that settlement agreement." Counsel for the Tyes argued that "there's nothing to override the settlement that occurred on July 21st."

{¶ 11} Counsel for the Tyes asserted that the Defendants' portion of the entire settlement is $587,500.00, and that three percent of that is $17,625.00 per annum, or $48.29 per day, such that as of the date of the hearing, counting 259 days from July 21, 2012, the amount of interest due was $12,507.11. Counsel further asserted, "If the Court would rather use the August 24th date because that is the date that we decided that we would not structure the settlement and we requested the checks from the Defendants - - if the Court wants to use that date the number then would be not 259 days but 225 days times $48.29. And that number is $10,865.25." Counsel stated that $300,000.00 of the settlement amount went into a structured settlement, and "if the Court decides well I think they should only pay interest on the portion that they haven't paid to date that number would be the $287,500." Counsel concluded as follows:

> But again I go back and say that as of August 24th we requested the full amount of the settlement from these Defendants. And that's when they started this business about the MSA. And after we got things worked out with the MSA after November 8th and the Court made its ruling then the Tyes - - we had worked out all the subrogation issues. And then the Tyes decided well hey, we haven't got any money. Can we go ahead and structure it now? All the Defendants agreed we could go ahead and structure it then.

So we're asking for 3 percent on the $587,500 beginning on either July 21st or August 24th.

**{¶ 12}** Counsel for the Defendants then argued as follows:

First off, the custom and practice in Ohio especially medical malpractice cases is at the date that there's a mediation the parties do reach a settlement agreement there is no expectation the money will be paid that day. That's unrealistic especially when we're talking the mediation being conducted on a Saturday and the amount of money that was being involved.

What Mr. Beausay also failed to tell you was that at the conclusion of that mediation, as I outlined in the affidavit * * * which we filed back in October, * * * was when we left that day we had not finalized all the terms of the settlement. So technically there had not been a settlement agreement reached. Until all the terms are finalized a settlement agreement hasn't been reached.

And I know that Mr. Beausay has * * * claimed that there was no issue as to the MSA as of that date. The evidence is to the contrary, that there wasn't a meeting of the minds as of July 21st as to whether or not there was an MSA or not. And the best evidence of that is not just because I filed a motion for a Medicare Set Aside on behalf of my clients, but the other settling Defendants who have now been dismissed also filed a motion * * * asking for determination as to whether an MSA was required or not.

So it is clear based on the conduct of all the Defendants that were

involved in the mediation that none of us agreed or none of us believed we had reached an agreement as to that. It was further left undecided at the time of the mediation as to whether Plaintiff would be structuring the settlement or not. And therefore until that decision was made the parties were not in a position to finalize the settlement.

And it was also very clear despite what Mr. Beausay has said that there was an expectation that this settlement would require releases signed by the Plaintiffs in order to effectuate the settlement. And again the best evidence of that is Mr. Beausay's own admission is that the other settling Defendants did have releases that were sent and signed and executed by the Plaintiffs. And until those releases are signed and executed the law in Ohio is that there is no obligation to pay on the settlement.

{¶ 13} Defense counsel noted that "on August 24th Mr. Beausay sent an email saying we're not going to structure," and that before the Court ruled on the motion regarding the MSA, on November 6, 2012 "Mr. Beausay emails us and says we now want this structured. So as of November 6th * * * the Plaintiffs were changing the terms of the settlement. * * * not until November 8th when the court ruled did the parties reach any kind of agreement."

{¶ 14} Defense counsel further asserted that to finalize the settlement, "a release has to be signed." Regarding the release, defense counsel asserted, "I had to work with three different people at three different companies to come up with the language they wanted to put in the release for the structure. I had to work with two different people at two

different companies to come up with language they wanted in the release. That took some time." According to defense counsel, he sent the release to counsel for the Tyes on February 28, 2013, and it "still hasn't been returned to me. Until the Plaintiffs sign that release there is no obligation to pay." Defense counsel asserted, "there is no settlement until the release is signed. That is the standard of practice. There is no case that is settled without a release." Defense counsel denied that the Tyes should receive interest on the entire amount of the settlement "when a portion of it was paid in the structure."

{¶ 15} In rebuttal, counsel for the Tyes asserted that the release he received from Defendants did not contain a date because "the date that we signed that release and settlement agreement is the date of the settlement under * * * the Ohio Supreme Court cases." Counsel for the Tyes asserted as follows:

What the cases say is that the parties can settle a case like we did here on July 21st and that is the date of the settlement. The only exception to that, Judge, is if we enter into an agreement that contains a different date. We're not going to get into such an agreement Judge. The date of the settlement was July 21st. And if their release says this case was settled on July 21st the Tyes will sign it today. But they didn't put that date on there. He's trying to trick us but we're not falling for it.

Now this business about the MSA, Judge, the Defendants could have decided whether they were going to insist on an MSA before we ever settled this case. They could've done their research on that two years ago. They didn't and now they're trying to hold the Tyes hostage while they're trying to

figure out whether an MSA is necessary. They filed a motion that an MSA is necessary and they cite two cases and both of the cases say that an MSA is not necessary. * * * So this MSA thing, Judge, is just smoke and mirrors. * * *

{¶ 16} Counsel for the Defendants responded that the release is a "condition precedent to the settlement," and that the "terms of the settlement had not been resolved as of the time we left that mediation. The date of the settlement is when we get the release signed."

{¶ 17} At the conclusion of the arguments, the court indicated as follows:

* * * What I'm going to do is I'm going to look this over real quick and I'm going to make a decision from the bench. So give me about 10 minutes and I'll make a decision.

* * *

I believe that the first date that was important was the date of July 21st. And I believe that's the day that the mediation was completed. And I believe that everybody made an agreement to agree to settle. And I think that that agreement to agree was not completed until the November 8th date when this Court filed a decision stating that the MSA was not necessary. So I believe at that point then the parties were to follow through with what they needed to do to get this settlement down to brass tax (sic), to finish it up, to make sure that payment could be done since that was when the last - - or that issue was taken care of.

Now I kind of find fault with both sides and how you handled this situation. And the reason I do is because first I note that the Defendants have a carrier. And I understand a carrier who wants to cross all the - -dot all I's and cross all T's. I understand that and I understand a need to have a release in hand before money is given. So I think that going back and forth you could've settled this without coming to me. You could've - - you know it could've been done. It was not done.

So I think - - and I don't think that there's anything wrong in a Defendant who's going to be paying out a settlement, albeit an extremely large settlement, would not want to know what it is that they are going to pay for and what the limitations are so that nothing else can be brought up later on. So I think you all should've been - - you attorneys should've been calling back and forth if the clients were being difficult. I just think you all could've done that without getting me involved and you could've done a better job.

Having said that, the Court would say that the interest runs from November 8th on. The Court is ordering you all to, within two weeks, to have checks ready and paperwork signed. * * *

After counsel for the Defendants objected to the time period set forth by the court, the court extended the time period to three weeks and stated, "- - you all need to meet, make a date where you all are going to get together, exchange and sign and everything and take care of it. You can do this."

**{¶ 18}** The following exchange then occurred:

THE COURT: And your clients should know - - they need to go forward with what they agreed. * * * - - any hurdles were taken out of their way November 8th.   And take care of it.

MR. MCCARTNEY: Your Honor, the other question that is - - is it on the full amount or is it just on the - - because we did pay the structure on a timely basis from when they requested it in terms of getting the structure funded.

THE COURT: Whatever's left and owing you   - -

MR. MCCARTNEY: Okay.   Thank you, Your Honor.

**{¶ 19}** In its decision of October 22, 2013, the trial court determined as follows:

* * *After briefing the issue, a hearing was held on April 5, 2013.   At the conclusion of the hearing the Court made the following findings:

• The parties agreed to reach a settlement on July 21, 2012.

•A dispute th[e]n arose on in regard (sic) to the necessity of a Medicare Set-Aside.

• The court held on November 8, 2012, that a Medicare Set-Aside was unnecessary.

• The agreement between the parties was reached on November 8, 2012.

• Accordingly, interest at the statutory rate of 3% shall run from November 8, 2012.

• The ruling applies only to the "cash" portion of the settlement with

these defendants; the "structured" position (sic) of the settlement has been paid.

> • The Defendants are ordered to comply with this order on or before November 22, 2013.

It is not clear why the court did not issue a written decision for over six months after the hearing. We note that the Defendants' brief provides that "[w]hile the Trial Court issued an oral ruling at the time of the hearing, a dispute between the parties as to the Trial Court's ruling resulted in the Court's order not being entered until October 22, 2012." (Sic).

{¶ 20} We will consider the parties' assigned errors together. The Tyes assert one assignment of error as follows:

> THE LOWER COURT ERRED IN FAILING TO APPLY THE OHIO SUPREME COURT'S HOLDING IN *HARTMAN V. DUFFEY* THAT ". . . A PLAINTIFF WHO ENTERS INTO A SETTLEMENT AGREEMENT IS ENTITLED TO INTEREST ON THE SETTLEMENT, WHICH BECOMES DUE AND PAYABLE ON THE **DATE OF SETTLEMENT**." 95 Ohio St.3d 456, 768 N.E.2d 1170 (2002), paragraph sixteen of the syl. [Emphasis added]. SPECIFICALLY, THE LOWER COURT ERRED IN FINDING THAT THE OPERATIVE DATE OF SETTLEMENT IN THE UNDERLYING CASE WAS NOVEMBER 8, 2012 RATHER THAN JULY 21, 2012.

{¶ 21} The Defendants' sole assigned error is as follows:

> WHETHER THE TRIAL COURT ERRED IN ORDERING

POST-SETTLEMENT INTEREST BEFORE PLAINTIFFS HAVE EXECUTED A RELEASE AS REQUIRED BY THE SETTLEMENT.

{¶ 22} R.C. 1343.03 provides:

(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable * * * upon any settlement between parties, upon all verbal contracts entered into, * * * the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶ 23} In *Hartmann*, upon which the Tyes rely, Christina Hartman filed a medical malpractice action against three defendants. *Id.*, ¶ 1. On June 5, 2000, the first day of trial, "the parties entered into a confidential settlement agreement, and the case was dismissed without a formal judgment entry. Seventeen days later, Hartmann filed a motion to enforce interest on the settlement amount pursuant to R.C. 1343.03(A) * * *." *Id*. Hartmann received the settlement check on June 30, 2000. *Id*. The trial court denied the motion for interest "on the ground that the settlement had not been journalized." *Id.*, ¶ 2. The court of appeals affirmed. *Id*.

{¶ 24} The issue before the Supreme Court of Ohio was "whether a plaintiff who enters into a confidential settlement agreement that has not been reduced to judgment is entitled to interest on the settlement, and, if so, when that interest begins to accrue." *Id.*, ¶

3. The *Hartmann* Court determined that interest "may arise from a settlement not reduced to judgment." It examined the plain language of R.C. 1343.03(A), namely that money becomes due and payable "'upon any settlement between parties,'" and from this language it determined that it "is clear that the date of settlement is the accrual date for interest to begin to run." *Id.*, ¶ 10, 11. The court concluded that at "the point of settlement, a settlement debt is created, and plaintiff becomes a creditor entitled to the settlement proceeds. Thus, the plaintiff is entitled to be compensated for the lapse of time between the accrual of that right (the date of settlement) and payment." *Id.*, ¶ 11.

{¶ 25} According to the *Hartmann* Court:

This conclusion is further supported by the public policy reasons behind the award of interest. In *Musisca v. Massillon Community Hosp.* (1994), 69 Ohio St.3d 673,676, 635 N.E.2d 358, a case involving the issue of when the right to prejudgment interest accrues, we stated that "*any statute awarding interest* has the * * * purpose of compensating a plaintiff for the defendant's use of money which rightfully belonged to the plaintiff." (Emphasis added). Therefore, the entitlement to interest, whether it be prejudgment interest, postjudgment interest, or postsettlement interest, "is allowed, not only on account of the loss which a creditor may be supposed to have sustained by being deprived of the use of his money, but on account of the gain being made from its use by the debtor.'" *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140, quoting *Hogg v. Zanesville Canal & Mfg. Co.* (1832), 5 Ohio 410, 424, 1832 WL 26. By

assessing interest from the date of settlement as provided for in R.C. 1343.03(A), we believe that this public policy of fully compensating the plaintiff will be achieved. *Id*., ¶ 12.

The *Hartmann* Court reversed the judgment of the court of appeals and granted Hartmann's motion for interest on the settlement amount to run from June 5, 2000, to June 30, 2000. *Id*., ¶ 13.

{¶ 26} The Supreme Court of Ohio cited *Hartmann* in *Layne v. Progressive Preferred Insurance Company*, 104 Ohio St.3d 509, 2004-Ohio-6597, 820 N.E.2d 867, upon which the Tyes also rely. *Layne* arose from a suit brought by Allen Layne for damages resulting from a car accident. At a pretrial conference on October 31, 2000, the parties orally agreed to settle the case for $12,500.00. *Id*., ¶ 1. On November 7, 2000, counsel for Progressive sent counsel for Layne a settlement check for $12,500.00, "a written agreement for Layne to sign, and a stipulation for dismissal and judgment entry. The agreement contained an integration clause that read: '[N]o promise, inducement or agreement not herein expressed has been made to [Layne], and this release contains the entire agreement between the parties hereto.'" *Id.*

{¶ 27} Layne signed the agreement on November 15, 2000, striking an indemnification clause. *Id*., ¶ 2. Counsel for Layne signed the stipulation and sent the documents to Progressive. *Id.* On June 12, 2002, Layne filed a complaint for statutory interest, pursuant to R.C. 1343.03(A), from October 31, 2000, to November 7, 2000. *Id.*, ¶ 3. Both parties filed motions for summary judgment, and the trial court granted Layne's motion and awarded interest on the settlement. *Id*., ¶ 5. The appellate court reversed the

award of statutory interest, determining that the "November 15 written agreement signed by Layne contained an integration clause that nullified any prior oral agreement that may have existed between the parties." *Id.*

{¶ 28} The Supreme Court of Ohio noted that Layne relied upon *Hartmann*, and determined that Layne's reliance was misplaced. The Court found that *Hartmann* was distinguishable, since therein "it was undisputed that the parties had entered into a confidential settlement agreement on the first day of trial. *Hartmann* stands for the proposition that under R.C. 1343.03(A), interest begins to accrue on the settlement date. It does not speak to the determination of what constitutes the settlement date, which is the primary focus of his case." *Id.*, ¶ 9. The Court determined that "the integration clause in the November 15 agreement nullified the alleged October 31 oral agreement between the parties," since "not only does the November 15 agreement fail to mention any other date of agreement between the parties, but it also bars the acknowledgment of any other such agreement that may have existed." *Id.*, ¶ 11.

{¶ 29} The Court concluded as follows:

> * * * We do not doubt that settlements are often orchestrated in the manner employed here, nor do we hold that plaintiffs who resolve disputes in this manner are absolutely precluded from obtaining interest on settlement amounts until a release of claims is signed. Rather, we hold fast to our statement in *Hartmann* that the accrual of interest from the date of settlement best serves the "public policy of promoting prompt payment of settlements, of fully compensating the plaintiff, of ensuring that the plaintiff receives the use

of money that rightfully belongs to [him or] her, and of preventing a party from benefitting from its own delay." * * *

Further, the parties to an oral agreement such as this one must be responsible for ensuring that the date of settlement, and the due and payable date, if different, are negotiated and agreed upon. Layne did not strike or modify the integration clause, nor did he negotiate beforehand for a certain date on which interest would begin to accrue. He struck only the indemnification clause and chose not to negotiate any other term of the agreement. Instead, he signed a written release of claims on November 15 that included an integration clause nullifying the October 31 oral agreement. Layne is consequently not entitled to the roughly $24 of interest he seeks. *Id.*, ¶12-13.

{¶ 30} In a separate opinion, Justice Pfeifer concurred as follows:

I would have used this case to institute a permanent, workable rule for the calculation of interest on settlements. The clock should not run on interest payments at the moment the last party says "O.K." Interest should accumulate on settlement amounts after a reasonable time has passed for administrative activities. This court should impose a seven-day period for the payment of settled claims without the calculation of interest. After that seven-day period, a settling payor would be liable for interest calculated back to the day of settlement. This rule would recognize the role of settlements in the administration of justice, allow for the practical realities of paperwork,

and encourage cases to be settled and debts paid in an orderly manner.

{¶ 31} The Ohio Supreme Court adopted such a rule in *Bellman v. American International Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, upon which the Defendants rely. Therein, Bellman and 23 other claimants "filed a class action lawsuit against 21 insurance carriers alleging that each had engaged in a regular practice of delaying payments on case settlements in an effort to derive a financial benefit from the 'float' on the settlement funds." *Id*., ¶ 1. In each of the causes of action "the claimant and the tortfeasor or the torfeasor's insurance carrier negotiated a settlement." *Id*., ¶ 2. According to the complaint, however, "the insurance carriers did not issue settlement checks at that time; instead, the carriers issued settlement drafts and settlement agreements at a later time. This period between the time of the oral agreement to settle the case and the payment date represents the 'float'". *Id*. The complaint sought class action certification "and a judgment entitling the claimants to postsettlement interest from the date of the oral settlements in accordance with R.C. 1343.03(A)." *Id*.

{¶ 32} The trial court did not certify the class, and separate complaints were subsequently filed, which the court consolidated for disposition. *Id*., ¶ 2. The insurance carriers moved for summary judgment individually, and the trial court granted summary judgment in their favor. *Id., ¶* 3. Eight claimants appealed, and the appellate court affirmed the decision of the trial court. *Id*., ¶ 4. The appellate court's opinion reflected that "of all the original claimants, all but eight did not settle with their respective carriers during the trial and appellate proceedings." *Id*., ¶ 5. Kevin Bellman appealed to the Ohio Supreme Court individually and on behalf of other similarly situated claimants. *Id.* Bellman asserted

that "because the written releases do not contain an integration clause, the date of the prior oral agreements is the date of settlement for purposes of calculating postsettlement interest." *Id.*, ¶ 6. Relying upon *Layne*, the carriers argued that the "executed written releases in each case compose the entire agreement between the parities and bar the use of parol evidence to contradict a later written agreement." *Id.*

**{¶ 33}** After discussing *Layne*, the *Bellman* Court determined that Bellman's assertion that *Layne* is distinct, due to the presence therein of an integration clause, to be "a distinction without a difference." *Id.*, ¶ 10. The Court noted that a "contract that appears to be a complete and unambiguous statement of the parties' contractual intent is presumed to be an integrated writing, * * * ." *Id.*, ¶ 11. The Court concluded that "the absence of an integration clause does not preclude a finding that all or part of a contract is, in fact, an integrated writing, and we need not consider whether the parties entered into an agreement to agree with respect to their prior oral settlement negotiations or whether those prior oral agreements constituted separate contracts." *Id.*

**{¶ 34}** After noting that "none of the parties could have followed our direction and counsel in *Layne* with respect to negotiating the date for payment of postsettlement interest and incorporating it into any final settlement agreement, because negotiations had been completed several years before we announced our decision in *Layne*," the Court reviewed Judge Pfeifer's concurrence above and determined as follows:

> Today we adopt such a rule. The date of a written settlement agreement becomes the date from which postsettlement interest accrues, unless the parties to such a settlement agreement negotiate a different due and

payable date and incorporate that into the written settlement agreement. When an agreement fails to incorporate a separate due and payable date, the parol-evidence rule assumes that the formal written agreement embodies all of the terms of the agreement between the parties and therefor precludes extrinsic evidence to contradict its terms. Thus, unless otherwise specified, a claimant is entitled to postsettlement interest from the date of settlement agreement until the date of payment. Those who delay in forwarding settlement drafts incur postsettlement interest from the date of the agreement unless a different due and payable date is specified in the settlement agreement. *Id.*, ¶ 12.

**{¶ 35}** It is clear herein that a written settlement agreement between the parties does not exist, and we conclude that the rule announced in *Bellman* accordingly does not apply. In other words, the parties' oral settlement was not subsequently nullified as in *Layne* and *Bellman*; the settlement debt was created on July 21, 2012, and the Tyes became creditors entitled to the settlement proceeds on that date. As this Court has previously noted, it "is well-established that R.C. 1343.03(A) automatically bestows a right to postjudgment interest" as a matter of law. *Myles v. Richardson*, 2d Dist. Montgomery No. 23186, 2009-Ohio-6394, ¶ 29, citing in part *State ex rel. Shimola v. Cleveland*, 70 Ohio St.3d 110, 112, 637 N.E.2d 325 (1994). In *Hartmann*, the Supreme Court "explained that a prevailing party is entitled to postjudgment interest under R.C. 1343.03(A) even when a settlement agreement has not been reduced to judgment." *Myles*, *id.* In *Hartmann* the Court found that this "entitlement to interest, whether it be prejudgment interest, postjudgment interest,

*or postsettlement interest* 'is allowed, not only to account for the loss which a creditor may be supposed to have sustained by being deprived of the use of his money, but on account of the gain being made from its use by the debtor.'" The Defendants do not dispute that they agreed to settle the matter herein for a specific amount on July 21, 2012, and we conclude that the Tyes became statutorily entitled to interest from the date of settlement, consistent with *Hartmann* and the public policy discussed therein. We further note that the trial court's decisions of November 8, 2012, and October 22, 2013, lack consistency; in its November 8, 2012 Entry and Order the court correctly found that the "undisputed evidence" is that the parties entered into "a Settlement Agreement" for injuries, but then the court, on October 22, 2013, recharacterized the parties' agreement as "an agreement to agree to settle".

{¶ 36} We cannot conclude that the issue regarding the MSA and the issue of whether or not the settlement would be structured are "central core issues to the settlement" as the Defendants assert. We conclude that Defendants' argument regarding the MSA is disingenuous. This conclusion is supported by the fact that while the Tyes sought an opinion from a neutral expert regarding the MSA issue ahead of the settlement date, the Defendants merely joined the motion filed by other defendants ten days after it was filed. The "outside consultant" relied upon by defendants clearly lacked information about the case, and his correspondence is dated three months after the settlement date. Significantly, the authority attached to the defendants' motion does not support the motion but rather supports a conclusion that an MSA is not required in personal injury cases. As noted by the trial court, a representative for Medicare received notice of the MSA hearing and declined

to appear. Finally, regarding whether or not the settlement was to be structured or paid in cash, we agree with the Tyes that "that is not something that plaintiffs 'negotiate' with defendants; it simply determines to whom the settlement proceeds are made payable (i.e. to plaintiffs directly or to an annuity company)."

{¶ 37} In their brief, the Tyes assert that they are "entitled to post-settlement interest from July 21, 2012 until April 23, 2013, when defendants finally paid their portion of the settlement to plaintiffs." Defendants do not dispute that they paid the remaining cash portion of the settlement on April 23, 2013. The Tyes seek three percent interest[1] on the cash portion of the settlement amount of $287,500.00, which is $8,625.00 per annum, or $23.63 per day, for 277 days, for a total amount of $6,545.51. We agree that the Tyes are entitled to this postsettlement interest as a matter of law. Accordingly, the Tyes' assigned error is sustained, and the Defendants' assigned error is overruled. The October 22, 2013 judgment of the trial court that the postsettlement interest accrued as of November 8, 2012 is modified to reflect that postsettlement interest accrued as of July 21, 2012 on the cash portion of the settlement; as modified, the judgment is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

T. Jeffrey Beausay
Paul W. McCartney
Michael R. Traven

---

[1] R.C. 5703.47.

Patrick K. Adkinson
Michael F. Lyon
Neil F. Freund
Mark L. Schumacher
Susan Blasik-Miller
Charles J. Davis
Gregory D. Rankin
Hon. Frances E. McGee